### PERALES v. FLORES.
#### No. 10852.

Court of Civil Appeals of Texas. San Antonio.

Jan. 22, 1941.

Rehearing Denied Feb. 19, 1941.

Schlesinger, Schlesinger & Goodstein, of San Antonio, for appellant.

E. P. Lipscomb, of San Antonio, for appellee.

NORVELL, Justice.

This is an action of trespass to try title brought by appellant, Pedro Perales, administrator of the estate of Florencio Perales, deceased, against the appellee, Mary Flores, for the recovery of certain real property situated in Bexar County, Texas. The property stands in the name of Mary Flores and she claims the same as the surviving widow of Florencio Perales, asserting that she contracted a marriage with him which was valid at common law. There were no children of this purported marriage.

The jury impaneled to try the case found: (1) That the property involved was not purchased entirely with money belonging to deceased, Florencio Perales; (2) that Mary Flores and Florencio Perales had entered into a mutual agreement that they would, "commencing at once, live together for the future as husband and wife"; (3) that in pursuance to such agreement said persons had "lived and cohabited together as husband and wife and held each other out to the public generally as husband and wife."

Upon these findings judgment was rendered for the appellee.

Appellant asserts that the jury's findings relating to a common-law marriage are without support in the evidence. Should appellant's position be sustained, a reversal of the judgment must follow, as it was shown by uncontradicted testimony that the deceased, Florencio Perales, conducted the negotiations which resulted in the purchase of the property. At the time of the purchase, Perales was charged with the commission of a criminal offense, and for that reason requested that Mary Flores be named as grantee in the conveyance. These circumstances would give rise to a resulting trust in favor of Perales, his equity being in proportion to the amount his payments upon the consideration for the property bore to the total purchase price. Hornbeck v. Barker, Tex.Civ.App., 192 S.W. 276, writ refused; Baylor v. Hopf, 81 Tex. 637, 17 S.W. 230; 42 Tex. Jur. 637, sec. 36.

Bearing upon the issue of the existence of a common-law marriage, the evidence shows that during the year 1927 appellee and Florencio Perales entered into an arrangement which was meretricious in character, although both were competent to contract a legal marriage. According to appellee, the marriage took place in 1929. She gave direct evidence as to the agreement and, over appellant's objection that such testimony was inadmissible under Article 3716, Vernon's Tex.Civ.Stats., testified as follows:

"Q. I forgot to ask you about this. When you began going with Mr. Perales, about 1927, what arrangement was made with reference to the manner in which you were living? A. When he started going with me he said he was going to marry me.

"Q. Then when you began living with him what did he do with reference to marrying you? A. He said, 'Well, I guess there is no use for us to marry. We can live just as good without marrying because many people marry and divorce. We can live happy just the same.'

"Q. What did he say with reference to you living together? A. He said—he meant it was just as good as if I was his wife.

"Q. What did he say with reference to you living with him? Did he say he would marry you? State what Perales said. A. When he first started to go with me he said he was going to marry me and afterwards—we started going together and afterwards he said, 'Well, it will be just as good without marrying as marrying because many people marry and divorce and don't live together. I think just as much

of you and it is just the same as if you would be my wife.'

"Q. He said he thought just as much of you? A. Yes.

"Q. As if you had had a marriage? A. That he would think just as much of me without being married as if we would be married. The same thing. Just like he would be my husband and I would be his wife."

Appellant does not assert that the trial court erred in admitting this testimony over his objection, but does contend that such testimony discloses an agreement which cannot be made the basis of a marriage at common law.

▬ The necessary elements of a common-law marriage are set out in numerous Texas cases, among them being Grigsby v. Reib, 105 Tex. 597, 153 S.W. 1124, L.R.A. 1915E, 1, Ann.Cas.1915C, 1011, and Drummond v. Benson, Tex.Civ.App., 133 S.W. 2d 154, writ refused. We are here primarily concerned with the agreement or contract which is necessary to constitute the basis for a marriage at common law, for cohabitation and professedly living together as husband and wife will not constitute a legal common-law marriage if the element of a proper contract is lacking.

In the case of Schwingle v. Keifer, 135 S.W. 194, 196, the late Chief Justice Fly, speaking for this Court, said: "In this case it has been attempted to prove the contract of marriage between appellant and Jacob Schwingle by the statements of appellant as to a positive agreement, as well as by cohabitation and by his declarations, and reputation in the community in which they lived, and if her testimony fails to sustain such agreement, cohabitation, nor declaration, nor reputation separate, nor combined, will prove marriage. Without an attempt and a failure to prove an agreement to become husband and wife, the other facts might become potent in establishing the marriage, but when the direct testimony as to the agreement fails the other evidence must fail also, for all the indirect or hearsay evidence is builded upon the agreement to become man and wife."

In affirming this Court's decision in the Schwingle case, Chief Justice Brown, of the Texas Supreme Court, said:

"A living and cohabiting together as husband and wife, or declarations of the parties that they are husband and wife, do not of themselves constitute a marriage in fact, in the absence of an agreement, express or implied. An agreement, either express or implied, coupled with a proviso or qualification, made at the time of entering into a marriage contract, that either or both of the parties to the contract could dissolve the contract at will would not in law constitute a marriage contract. * * *

"The plaintiff in error was permitted to testify, over objection, although she was incompetent. Edelstein v. Brown, 100 Tex. 403, 100 S.W. 129, 123 Am.St.Rep. 816. The charge of the court was more favorable to her than the law justified.

"Her own statement of the agreement between her and Schwingle showed that it did not in law constitute marriage. If it were the law that they could have created a marriage by contract only, it must have been *an absolute agreement to be husband and wife during their lives*. She proved that no such agreement was made; therefore there was no marriage. She could not have recovered if there had been no evidence but her statement." Italics ours. Schwingle v. Keifer, 105 Tex. 609, 153 S. W. 1132, 1133. See also Bell v. Southern Casualty Co., Tex.Civ.App., 267 S.W. 531, writ refused.

▬ Applying the above rules to appellee's testimony in the present case, even if it be considered that Perales in speaking of "marriage" had reference only to a statutory marriage, the conclusion is inescapable that he intended an agreement creating a status determinable at will. His reference to divorce clearly indicates that he intended to create an arrangement which could be terminated by him without the intervention or approval of the governmental agencies of society. This proviso entered into and formed a part of the contract relied upon to support the alleged common-law marriage. Under the authorities above cited, such an agreement does not create a status recognized as marriage under the common law as applied in this State. And certainly appellee's testimony fails to meet the test set out by this Court in King v. King's Heirs, 16 S.W.2d 160, wherein it was held that the elements of a common-law marriage must be established by clear and satisfactory proof.

Appellant's assignments attacking the sufficiency of the evidence to support the jury's findings relating to the alleged common-law marriage are sustained. The judgment of the trial court is reversed and the cause remanded.