Rosie Lee RUSH, Appellant,

v.

TRAVELERS INSURANCE COMPANY et al., Appellees.

No. 7281.

Court of Civil Appeals of Texas.

Texarkana.

May 23, 1961.

was accidentally killed on August 20, 1959, during the course of his employment for an employer insured by appellee insurance company. Cora Mae Rush, as plaintiff, appealed from an award of the Industrial Accident Board, and filed suit against Rosie Lee Rush, individually and as guardian for minor children of Claud Rush, and against the insurance company, alleging that she was the surviving wife of Claud Rush and was entitled to the widow's benefits under the workmen's compensation insurance act, V.A.T.S. Insurance Code, art. 5.55 et seq. Certain stipulations were made, evidence was heard, special issues submitted were answered by a jury, and the trial court rendered judgment against the insurance company awarding certain benefits to minor children of Claud Rush, and awarded the widow's benefits to Cora Mae Rush and denied Rosie Lee Rush's claim for benefits as an alleged common law surviving widow of Claud Rush, and also made other rulings. Rosie Lee Rush has appealed and is the only party who has appealed.

Appellant contends, among other things, that the undisputed evidence shows that subsequent to September 19, 1947, that there was an expressed, as well as implied, agreement between appellant and Claud Rush to become man and wife, a living together as such and a holding out to the public as man and wife.

Appellee Cora Mae Rush contends, among other things, that no valid common law marriage between Rosie Lee Rush and Claud Rush was proven, but that on the contrary under the undisputed evidence and judicial admissions made by appellant Rosie Lee Rush that it was conclusively shown that there was no assent on the part of Claud Rush to a common law marriage with Rosie Lee Rush and that Rosie Lee Rush was estopped to contend that there was such a common law marriage by virtue of her fraudulent representations made to Claud Rush, which he relied on and was thereby induced to live with Rosie Lee Rush.

---

Jesse L. Nickerson, Pittsburg, for appellant.

Otto Atchley, Texarkana, Ed Burke, Jr., Hughes Springs, Fulton & McClain, Gilmer, W. C. Hancock, Pittsburg, for appellee.

FANNING, Justice.

The primary question involved on this appeal is whether appellee Cora Mae Rush or appellant Rosie Lee Rush was the lawful wife of Claud Rush at the time of his death.

The question arises from a workmen's compensation insurance case. Claud Rush

Rosie Lee Rush and Claud Rush were ceremonially married in 1937. They had children by this marriage; this marriage was terminated by a valid decree of divorce in Cause No. 4775 in the District Court of Camp County, Texas, on September 19, 1947. Another child was born to Rosie Lee Rush about five months after the divorce decree.

Subsequent to the divorce of September 19, 1947, (as found by the jury) Rosie Lee Rush represented in effect to Claud Rush that the divorce had not gone through and induced him to continue to live with her. The jury's findings are hereinafter more particularly noted. Claud Rush and Rosie Lee Rush thereafter lived together, cohabited together, had other children born to them, lived in the same house, bought furniture, groceries and insurance together, paid back taxes together, went places together, etc., until they separated in February, 1957.

On March 18, 1957, Rosie Lee Rush, as plaintiff, filed a divorce suit against Claud Rush, in Cause No. 6246 in the District Court of Camp County, Texas, which cause was later non-suited by Rosie Lee Rush and dismissed by the court on March 28, 1957. A preliminary hearing on certain features of this cause was heard prior to its dismissal at which time Rosie Lee Rush gave certain testimony.

On March 8, 1959, Claud Rush and appellee Cora Mae Rush were ceremonially married and thereafter lived together as husband and wife until his death.

In response to special issues submitted the jury in the cause found in effect as follows:

(1) That Cora Mae Rush and Claud Rush were married by a ceremonial marriage on or about March 8, 1959;

(2) That Rosie Lee Rush informed Claud Rush subsequent to September 19, 1947, that she did not get a divorce from him;

2A. That Claud Rush believed such statement to be true;

2B. That Claud Rush relied upon such statement and lived with Rosie Lee Rush as her husband until on or about February 1, 1957; and

(3) That Rosie Lee Rush and Claud Rush did not mutually and unqualifiedly agree, either expressly or impliedly, to become man and wife on or about September 19, 1947.

■ The living together and cohabitation of parties as man and wife and their holding each other out to the public as such satisfies but two of the three essentials of a common law marriage, since this conduct must have been pursuant to an agreement to presently become man and wife. Shelton v. Belknap, 155 Tex. 37, 282 S.W.2d 682. This agreement may be implied and need not be an express agreement and such an agreement may ordinarily be inferred from evidence which establishes the other two constituent elements. Shelton v. Belknap, supra. However, such an agreement can not be implied contrary to direct evidence which definitely shows that there was no such agreement. Clack v. Williams, Tex.Civ.App. San Antonio, 189 S.W.2d 503, 504, wr. ref., w. m.

In Clack v. Williams, supra, opinion by Justice Norvell, it was stated:

"The evidence in the case not only will not support a finding that Melvin and Iona Williams entered into a common law marriage, but conclusively shows that they did not. In the leading case of Grigsby v. Reib, 105 Tex. 597, 153 S.W. 1124, L.R.A.1915E, 1 Ann.Cas.1915C, 1011, the Supreme Court held that a marriage at common law would be recognized as valid, provided competent persons mutually agree and consent together to become husband and wife and thereafter carry out that agreement and live and cohabit together as husband and wife. There

can be no marriage in the absence of a contract.

"It is well settled that a party will not be allowed to recover upon a theory which embraces the existence of a set of facts which said party testifies unequivocally are not true. Southern Surety Co. v. Inabnit, Tex.Civ.App., 1 S.W.2d 412, Annotation, 80 A.L.R. 626. Upon the trial of this case, Melvin Williams testified that he knew nothing about his wife's having obtained a divorce from him, that his wife never told him anything about it, but that he continued to live with her after the date of the divorce decree in the same manner as he had for many years previous thereto. He stated that the first time he knew of a divorce having been granted was when Iona Williams' will was offered for probate. There was some evidence that upon a hearing in the probate court Melvin Williams admitted that he had been served with citation in the divorce suit. Upon the point involved here, this matter is immaterial as Williams can not in this proceeding attack the validity of the divorce decree. His testimony does, however, conclusively show that at no time after the rendition of the divorce did he and Iona Williams then and there make an agreement to become husband and wife. *If there be no meeting of the minds, and there certainly was none in this case, there can be no contract, and hence no marriage.*

"Appellee placed on the stand a number of witnesses who testified in substance that after January 30, 1943, the date of the divorce, Melvin and Iona Williams apparently lived together as husband and wife, and held themselves out as such. Testimony of this nature under certain circumstances raised an implication that such parties have actually entered into a marriage agreement. *However, such an agreement can not be implied contrary to direct evidence which definitely shows that there was no such agreement.* Schwingle v. Keifer, 105 Tex. 609, 153 S.W. 1132; Perales v. Flores, Tex.Civ.App., 147 S.W.2d 974, writ refused.

"The judgment of the trial court is reversed and the cause remanded for further proceedings not inconsistent with this opinion." (Emphasis added.)

There was no direct testimony to the effect that Claud Rush ever assented to a common law marriage with Rosie Lee Rush. The testimony and admissions of Rosie Lee Rush also negate any inference that Claud Rush ever assented to a common law marriage with Rosie Lee Rush. We quote from the testimony of Rosie Lee Rush in part as follows:

"Q. Do you recall Judge Rolston asking you some questions? A. Yes, sir.

"Q. Do you recall him asking you this, "'Did you talk to Mr. Wingle about that divorce suit?' A. Yes, sir, I remember that.

"Q. And do you remember that your answer was, "'Yes, sir.'" A. Yes, sir, I do.

"Q. And then he asked you the next question, "'When you left the courtroom did Mr. Winkle tell you you were divorced?'" A. Yes, sir, I remember it.

"Q. And do you remember that you answered, "'Yes, sir, he did.'" A. Yes.

"Q. And do you remember the judge asking you, "'Did you hear the judge up here tell you he was going to grant that divorce?'" And you answered, "'Yes, sir, he did,'" And then the judge asked you, "'And that he was going to set that home aside to you as long as you wanted to use it.'" A. Yes, sir.

"Q. And you said, "'Yes, sir.'" And he said, "'And ordered Claud to pay you forty dollars a month.'" You said "'Yes, sir.'" And then he asked you this question, "'What made you think you didn't have a divorce then?'" A. That's right, I remember it.

\* \* \* \* \* \*

"Q. Yeah, but you told him you didn't even go through with the divorce, didn't you, that you didn't pay for it, and it didn't go through, that is what you told him, wasn't it? Answer it, Rosie Lee. A. Yes, sir, I did.

"Q. That is what you told him? A. Yes, sir, I sure did.

"Q. That it didn't go through. And then, of course, he kept supporting you and the children? A. Yes, sir, he sure did.

\* \* \* \* \* \*

"Q. And you knew the judge had told you you was divorced? A. I knowed that, too.

"Q. But that is not what you told Claud. You told Claud it didn't go through, you didn't finish paying for it. A. I had to tell him, Mr. Hancock, for him to tell me to come and cancel it.

\* \* \* \* \* \*

"A. I told him I put in for divorce and he told me to come up here and cancel it, which I did.

"Q. Yeah. A. I come to see lawyer Winkle and he told me it had gone through and we just kept living together up until '57.

\* \* \* \* \* \*

"Q. That is the only time you married Claud? A. In 1937.

"Q. You never did marry him any other time? A. Never did quit living with him. No other time.

\* \* \* \* \* \*

"Q. And you told your lawyer, Mr. Holt, right up here that very day that the only time you married Claud was back there in 1937, eight or nine or forty, whenever it was, and you never did marry him again after that divorce was granted, didn't you? A. That's right.

\* \* \* \* \* \*

"Q. What did you tell him? (Referring to Claud Rush—interpolation ours). A. I told him I had put in for my divorce.

"Q. Well, he had been served with a citation, he knew that? A. Well, O.K., he told me to come up here and cancel it and we would live together on as husband and wife.

"Q. Just like you had? A. And I did come.

"Q. But you didn't cancel it did you? A. It was done through."

The above quoted testimony and admissions of Rosie Lee Rush were not thereafter satisfactorily explained.

■ The findings of the jury to the special issues were amply supported by evidence of probative force—in fact, the judicial admissions made by Rosie Lee Rush in her own testimony, not thereafter satisfactorily explained, compel the findings of the jury and fully negate any implied inference that Claud Rush ever assented to a common law marriage with Rosie Lee Rush.

Appellant's points 1 through 8, inclusive, have been carefully considered, are deemed as not presenting reversible error in this cause and are respectfully overruled.

■ Appellant Rosie Lee Rush by her 9th point contends that the trial court erred in taxing *all* costs in the court below against her. In the suit for workmen's compensation insurance Travelers Insurance Company, the insurer defendant, denied liability in its answer and did not

-tender any sum of money in court for the benefit of anyone. It did make certain admissions and stipulations in the trial court as to liability but did not stipulate as to any wage rate. It therefore became necessary for the claimant parties to present evidence with respect to the ascertainment of a proper wage rate under the workmen's compensation act, Vernon's Ann.Civ.St. art. 8306 et seq. Considering the whole record in the cause it is our opinion that it would be just and equitable to tax one-half of the costs in the court below against appellee Travelers Insurance Company and one-half of the costs in the court below should be taxed against appellant Rosie Lee Rush. However, all costs of appeal should be taxed against Rosie Lee Rush.

The judgment of the trial court is affirmed as modified by taxing one-half of the costs of the court below against appellee Travelers Insurance Company and one-half of same against appellant Rosie Lee Rush. All costs of appeal are taxed against appellant Rosie Lee Rush.

Affirmed as modified.