**Rosa HODGES (Pemberton), Appellant,**

v.

**Alfred PEMBERTON, Appellee.**

**No. 17029.**

Court of Civil Appeals of Texas.

Fort Worth.

May 23, 1969.

Patrick A. Myers, Jacksboro, for appellant.

Payne Roye, Graham, and Gerald Weatherly, Dallas, for appellee.

OPINION

LANGDON, Justice.

This appeal is from a judgment granting a divorce and a division of property. No children are involved. Trial was to the court without a jury.

The appellant's appeal is based upon no evidence and insufficient evidence points and the assertion that the judgment of the court is not supported by but is contrary to the evidence because the undisputed evidence fails to show as found by the court that (1) her association with the appellee beginning about June 1, 1961, and terminating about March 1, 1968, constituted a

common-law marriage, (2) the appellant was cruel toward appellee to such extent that further living together was insupportable, (3) the house and two acres of land in Jack County where the parties had resided and a house and lot in Bryson, Texas, together with two caterpillars (bulldozers) and a Ford truck was the separate property of appellee and should be awarded to him. (No complaint is made concerning disposition of the remaining property of the parties, consisting of livestock, poultry and other personalty.)

We affirm in part and reverse and render in part.

In a non-jury case where the record contains a statement of facts and no findings of fact or conclusions of law were requested or filed as in this case it is presumed upon appeal that the trial judge found every issue of fact in support of the judgment where such facts are raised by the pleadings and are supported by the evidence. It is the duty of this court to affirm the judgment if it can be sustained on any reasonable theory which is supported by the evidence and is authorized by law. The appellant has the difficult burden of showing that the undisputed facts negative one or more of the essential elements which support the judgment. 4 McDonald Tex. Civil Practice, p. 1302, § 16.10(d); Rule 296, Texas Rules of Civil Procedure, "Conclusions of Fact and Law," and decisions under Note (26); 23 A.L.R.2d 1114 (1950); 3 Tex.Jur.2d, "Appeal and Error —Civil," page 689, § 438; Rosales v. Rosales, 377 S.W.2d 661 (Corpus Christi Civ. App., 1964, no writ hist.).

In our opinion the appellant has fully met the burden outlined by the above authorities in respect to the court's findings of a "common-law marriage" and of "cruel treatment" rendering further living together insupportable as grounds for the divorce. It follows of course that a holding contrary to that of the court as to a "common-law marriage" will obviate necessity for a divorce and will leave the parties in

the same situation as though there had been such a marriage and a divorce granted. The only issue remaining would be the partitioning of their property.

The appellant initiated suit against the appellee for partition of their property in Cause No. 5429, Rosa Hodges v. Alfred Pemberton. The appellee alleging a "common-law marriage" initiated suit against the appellant seeking a divorce and division of their property in Cause No. 5435, Alfred Pemberton v. Rosa Pemberton. By agreement of the parties the court consolidated the two causes of action under Cause No. 5435 for trial. The appellant in her first amended original answer to the divorce action denied the existence of a common-law marriage and prayed that judgment be entered partitioning said property between the parties as their interests may appear.

The appellee claimed as his separate property: "A house and 2 acres in Jack County where the Plaintiff and Defendant have been living. A house and lot situated in Bryson, Texas. 2 bull dozers, One F900 Ford Truck."

Appellant contends that the property above described was conveyed by the appellee to his daughter, Linda K. Atchley, for the purpose of defrauding a creditor and was thereafter conveyed to her (appellant) by Linda K. Atchley. The question of conveyance of community property in fraud of the rights of the appellant is not involved. It is undisputed that the property in question was, at the time of its original conveyance on December 8, 1960, the separate property of appellee and was conveyed to his daughter months prior to the time appellant and appellee commenced living together.

On October 25, 1963, the caterpillars (bulldozers), the Ford truck and other heavy machinery and equipment were transferred to the appellant and on August 23, 1965, Linda K. Atchley and husband, James H. Atchley, conveyed the two parcels of real property to the appellant.

These transfers of the real and personal property were made at the request and direction of the appellee with the knowledge, acquiescence and the understanding of the appellant that such conveyances were made in order that the appellee would be in a better position to sell such property. At one time before their relationship became rather strained the testimony was to the effect that appellant would reconvey the property to appellee, however, she stated she never agreed to do so.

■ It should be noted that no outside creditors intervened in this cause and thus the conveyance of the property in fraud of the rights of creditors is not involved. Obviously appellant is not entitled to benefit under any such claim as she was a party to the conveyances of the personalty in 1963 and of the realty in 1965.

■ It appears clear under the evidence in this case that the appellee transferred the property in question to his daughter under an agreement and with the understanding that eventually the property would be returned to him. The transfer of the same property by the appellee's daughter to the appellant was made at the direction of the appellee under the same circumstances. Thus the beneficial title to such property was in the appellee at all times.

"A constructive trust is not inhibited by the statutory prohibition against the enforcement of express trusts resting in parol, and a parol agreement based on a constructive trust may be enforced. Ordinarily a parol agreement between a grantor and a grantee that the property conveyed shall be held in trust is an express trust that cannot be enforced. But where, under an oral promise to reconvey, property is conveyed to one who then fraudulently refuses to reconvey, a constructive trust is considered to arise that would not fall within the prohibition of the statute of frauds or the Texas Trust Act. The Court thus is not prohibited from declaring a party to be a trustee when the parties have not so agreed, since in doing so the court does not enforce an oral contract but enforces a constructive trust based on violation of fiduciary duty and to prevent unjust enrichment." 57 Tex.Jur.2d 445, "Trusts", § 55 and authorities cited.

The appellant's contentions that the property (found by the court to be the separate property of the appellee) was transferred to her for a valuable consideration, or alternatively as a gift to her, or again alternatively that appellee is estopped to claim title to the property because the conveyances were made for the purpose of defrauding a creditor are all without merit.

■ The court's finding on the "separate property" issue has strong support in the evidence. There was little, if any, evidence in support of a finding to the contrary.

"The statute providing for a property division on divorce vests a wise discretion and power in the trial court to determine questions of fact, in respect to the division or partition of the property between the parties to a divorce." 20 Tex.Jur.2d 545, "Divorce and Separation", § 207.

"* * * When the appellate court is confronted by the testimony of one witness in a divorce case that is directly contradicted by that of another witness, it must accept the trial court's decision on the point." 20 Tex.Jur.2d 527, "Divorce and Separation", § 190.

In discussing the remaining aspects of the case it should be noted that it is undisputed that the parties to this suit had not been united as husband and wife by a ceremonial marriage. There likewise is no contention by either party that there were impediments on the part of either party and thus they were competent to marry. On the matter of competency there was testimony that they were going together prior to appellant's divorce from her former husband but this date was not in the record. Both parties were unable to state when their relationship commenced.

Eleven witnesses testified in this case including appellee, his daughter and sister-in-law. Most of the testimony elicited from the witnesses pertained to the property involved. Except for the testimony of the parties to the suit the other nine witnesses in answering questions concerning the alleged common-law marriage had little information. They knew the parties had lived together or in the same house. This was the extent of their knowledge.

The testimony of the appellant (Rosa) and of the appellee (Alfred) on the issues of a common-law marriage is summarized as follows:

Rosa: She had lived in the same house as the appellant and had "slept" with him. She had never claimed to be his wife. When introduced by appellee as Mrs. Pemberton she would always say, "No, I'm Rosa." She was treated as a wife by appellee, rather than as a hired hand, although she was only his housekeeper. She took care of him when he was sick. She maintained her own bank account in the name of and signed checks as Rosa Hodges. She filed her own separate income tax report. The only checks in evidence were signed by Rosa Hodges. The business transactions in which she was involved were in the name, Rosa Hodges. Rosa was asked, "Now did you and Alfred discuss getting married? A. Well, when I first started working for him, he suggested that some day we get married but he says, 'Not now, I don't want to make any more mistakes, I've made too many up to now,' and we never did talk too much about it any more. There never was no date set or nothing, very little mention made of it."

Alfred: He started seeing Rosa before her last divorce was final. They went places, ate, bought groceries and went visiting and did other things together. He and Rosa lived together as husband and wife for several years and, "Of course, she taken off once in awhile and stayed gone two or three weeks at some of the kids, but to me,' well, she was my wife." That he and Rosa "were living together as man and wife. We were sleeping together." That they had discussed getting married but there were "a few little things that she wanted to put off, and then she never would marry me." He was then asked, "In other words, she never did consent to be married? A. No, she did at times but she never would come up. She * * * never did get ready, always be something wrong." Neither the appellant nor the appellee could recall when they first began living together. It is not clear from the record whether this began prior to her divorce.

"The elements of a common law marriage are: (1) an agreement presently to be husband and wife; (2) living together as husband and wife; and (3) holding each other out to the public as such. Ex parte Threet, 160 Tex. 482, 333 S.W.2d 361, and authorities there cited. It is not essential that an express agreement be shown by direct evidence. A contract to marry may be implied or inferred from evidence which establishes the second and third elements of the marriage. Shelton v. Belknap, 155 Tex. 37, 282 S.W.2d 682." Humphreys v. Humphreys, 364 S.W.2d 177 (Tex.Sup., 1963).

"The living together and cohabitation of parties as man and wife and their holding each other out to the public as such satisfies but two of the three essentials of a common law marriage, since this conduct must have been pursuant to an agreement to presently become man and wife. Shelton v. Belknap, 155 Tex. 37, 282 S.W.2d 682. This agreement may be implied and need not be an express agreement and such an agreement may ordinarily be inferred from evidence which establishes the other two constituent elements. Shelton v. Belknap, supra. However, such an agreement can not be implied contrary to direct evidence which definitely shows that there was no such agreement. Clack v. Williams, Tex.Civ.App. San Antonio, 189 S.W.2d 503, 504, wr. ref., w. m.

"In Clack v. Williams, supra, opinion by Justice Norvell, it was stated:

" 'The evidence in the case not only will not support a finding that Melvin and Iona Williams entered into a common law marriage, but conclusively shows that they did not. In the leading case of Grigsby v. Reib, 105 Tex. 597, 153 S.W. 1124, L.R.A. 1915E, 1, Ann.Cas.1915C, 1011, the Supreme Court held that a marriage at common law would be recognized as valid, provided competent persons mutually agree and consent together to become husband and wife and thereafter carry out that agreement and live and cohabit together as husband and wife. There can be no marriage in the absence of a contract.' " Rush v. Travelers Insurance Company, 347 S. W.2d 758 (Texarkana Civ.App., 1961, no writ hist.).

See also 38 Tex.Jur.2d 45, "Marriage," § 15; Cain v. Caine, 314 S.W.2d 137 (Waco Civ.App., 1958, no writ hist.); Rosales v. Rosales, supra; Drummond v. Benson, 133 S.W.2d 154 (San Antonio Civ.App., 1939, writ ref.); Perales v. Flores, 147 S.W.2d 974 (San Antonio Civ.App., 1941, writ ref.).

In an opinion by the late Chief Justice Fly of the San Antonio court it was said: "* * * when the direct testimony as to the agreement fails the other evidence must fail also, for all the indirect or hearsay evidence is builded upon the agreement to become man and wife." Schwingle v. Keifer, 135 S.W. 194, 196 (1911), affirmed by the Texas Supreme Court in 105 Tex. 609, 153 S.W. 1132.

■ Adherence to the authorities above cited leads us to the conclusion that the evidence in this record shows conclusively that the parties herein did not enter into a common-law marriage. There is no evidence of a contract or agreement, thus the first and primary element has no support in the evidence and we find no evidence in support of the third element.

Since the second element of a common-law marriage is supported by some evidence it may be said that the arrangement between the parties to the suit constituted at the most a meretricious or a concubinage relationship as defined in Perales v. Flores, supra, and Nevarez v. Bailon, 287 S.W.2d 521 (El Paso Civ.App., 1956, writ ref.), respectively.

Under the circumstances portrayed by the record in this case it is understandable that the learned trial judge would indulge every presumption to legitimize the arrangement between the parties to this suit. We simply are unable to find support for such beneficence on his part.

"We know of no principle or pronouncement under which the courts of Texas are required or authorized to resort to or indulge in presumptions, or liberal construction of law or application of facts, in order to legalize illicit relations between men and women. On the other hand, the rule is, and ought to be, in support of decency and good morals, that clear and satisfactory proof be required to establish a common-law marriage; proof that the intent of the parties—to raise such relation from the status of mere clandestine intercourse to the holy status of lawful wedlock—has been manifested by all the elements of statutory marriage, except the license and public ceremony.

"The case made here presents none of the decent elements of marriage, of home, of normal family life. Conceding as true all the evidence produced by appellant, it presents but a bald and sordid life of lewdness, attended by none of the characteristics of lawful wedlock except cohabitation. It does not matter whether marriage is, technically, a 'status' or a 'contract,' or whether it be solemnized in the manner and form prescribed by statute, or simply by mutual agreement, it does and should mean the same thing to the parties, and must be evidenced to the public by the same conduct and mode and manner of living; the only difference being the absence, in case of mutual consent, of license and public ceremony. Grigsby v. Reib, 105

Tex. 597, 153 S.W. 1124, L.R.A.1915E, 1, Ann.Cas.1915C, 1011; James v. James (Tex.Civ.App.) 253 S.W. 1112, writ of error denied." King v. King's Unknown Heirs, 16 S.W.2d 160 (San Antonio Civ. App., 1929), reversed and remanded at 34 S.W.2d 804 (Tex.Com.App, 1931), in which the decisive question involved the exclusion of evidence.

The appellant's assignment attacking the sufficiency of the evidence to support the court's findings of a common-law marriage is sustained  In the event it be determined that we are mistaken in this regard and that the finding of a common-law marriage was correct we then hold that appellant's assignment attacking sufficiency of the evidence to support a finding of "cruel treatment" as grounds for divorce should be sustained and thus judgment rendered denying the divorce.  Assuming that every word testified to by the appellee was true and was believed by the trial judge it falls far short of meeting the proof required to support the allegation of cruel treatment as that term is construed by the authorities.  20 Tex.Jur.2d 352, § 8; Green v. Green, 268 S.W.2d 237 (Waco Civ.App., 1954, no writ hist.); Blake v. Blake, 263 S.W. 1075 (San Antonio Civ.App., 1924, no writ hist.); McDonald v. McDonald, 316 S.W.2d 780 (Fort Worth Civ.App., 1958, no writ hist.); Barrett v. Barrett, 368 S.W.2d 709 (Fort Worth Civ.App., 1963, no writ hist.); Art. 4629, Vernon's Ann.Civ. St.; and Ingham v. Ingham, 240 S.W.2d 409 (Amarillo Civ.App., 1951, Mand.. Overr.)

The judgment of the trial court with respect to the division and partition of the property of the parties is affirmed.  The portion of the judgment holding that the parties entered into a common-law marriage and granting a divorce is reversed and judgment here rendered that the parties were not husband and wife by virtue of a common-law marriage.

Affirmed in part and reversed and rendered in part.