**Librada Ortega HINOJOS, Petitioner,**

v.

**RAILROAD RETIREMENT BOARD,
Respondent.**

**No. 20166.**

United States Court of Appeals
Fifth Circuit.

Sept. 24, 1963.

228

Robert H. Hoy, Jr., El Paso, Tex., for petitioner.

Myles F. Gibbons, Gen. Counsel R. R. Retirement Bd., Chicago, Ill. (David B. Schreiber, Associate Gen. Counsel, and Helen V. Dudley, Chicago, Ill., of counsel), for respondent.

Before CAMERON and BROWN, Circuit Judges, and WHITEHURST, District Judge.

CAMERON, Circuit Judge.

The question involved in this petition for review of a decision of the Railroad Retirement Board is whether the Board erred in determining that petitioner is not the common-law widow of the deceased insured railroad employee, Luis Hinojos. The determination of marital status must be made, of course, according to the laws of the domicile of the deceased employee,[1] Texas in this case. If petitioner is Hinojos' widow, she is entitled to the residual lump-sum payment provided by 45 U.S.C.A. § 228e (f) (2) (i).

The following facts are not in dispute: the employee Hinojos died in El Paso, Texas on July 9, 1959. He had been living with petitioner since sometime in 1958, at which time Hinojos had a living wife, Cornelia, from whom he had not been divorced. Petitioner knew of the wife. A divorce was granted terminating the marriage to Cornelia on February 3, 1959.

Petitioner testified that she and Hinojos began living together in June, 1958, and their understanding was: "When we agreed in June, 1958, to live together we both agreed that our living together would constitute a marriage. He told me we would be ceremonially married as soon as he could obtain a divorce from Cornelia." She claims that this agreement was not changed; that they agreed to live together until death; that she believed that living together made them legally married, "because we both agreed that we were married in the sight of God." They did not enter into a ceremonial marriage at the time they began cohabiting because he was not then eligible to marry. They agreed that a ceremonial marriage would be performed in the future. After his divorce they talked of the ceremonial marriage, but he was not well at the time and promised her they would be ceremonially married when he felt better. After they began living together she was known both as "Librada Ortega" and as "Mrs. Librada Hinojos." She did not always use Hinojos' name because "when I began cohabiting with Luis he wasn't divorced, so I naturally did not represent myself to be Mrs. Hinojos. After he was divorced I did not break the habit formed previously." She further stated that there were no deeds or contracts executed, or insurance policies taken out, or bank accounts opened, after they began living together; that they had no joint business dealings except for "a charge account at Abraham's market on N. Pedras Street, but the account was in his name only." The employee would "occasionally introduce me as his wife but usually would merely say, 'Meet my Honey'." Her mail was addressed to her as "Librada Ortega" and they got their mail separately.

In answer to the questions, "After you both learned that the earlier marriage had ended, did you say or do anything about your relationship? If 'Yes', describe what each of you said and did at the time," she replied: "Yes. I tried to get him to fulfill his promise of a ceremonial marriage to me, but he said he didn't feel well—for me to wait until he was feeling better. He continued to promise me we would be married until he died, but we never got around to it."

There was evidence from acquaintances that the couple was considered to be man and wife. There was other evidence tending to show that they were not married, e. g., Hinojos had listed petitioner as his

---

1. 45 U.S.C.A. § 228e(l) (1).

"niece" in the records of the Southern Pacific Company, his employer; and petitioner, signing Hinojos' death certificate as informant, had signed her maiden name and represented Hinojos' marital status to be "divorced."

At the outset, we are met by respondent's insistence that the decision of the Board must be affirmed if it is based upon substantial evidence[2] and is "a reasonable application of the law."

We know of no case holding that a "reasonable application of the law" is sufficient. This Court long ago stated the standard: "The decision of the Board is tried if it be in tune with fact law, that is, if it find support in the evidence and *be not based on error of law.*" [Emphasis added.] Squires v. Railroad Retirement Board, 5 Cir., 1947, 161 F.2d 182, 183.

Although it may be that there is sufficient evidence to support the decision of the Board, an examination of the whole record, including the letters[3] to petitioner and petitioner's attorney explaining the denial of the claim, and Findings of Fact (actually mixed findings of fact and conclusions of law) and the Decision of the Board[4] indicate that the Board's le-

---

2. 45 U.S.C.A. § 228k incorporates the judicial review provisions of 45 U.S.C.A. § 355 (f): "The findings of the * * * Board as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive."

3. In a letter to petitioner dated October 8, 1959, the Director of Retirement Claims, after stating in general the requisites of a Texas common law marriage, explained that petitioner was not the widow of Hinojos:

"Based on the evidence which you have submitted, the relationship between you and the deceased employee cannot be considered a marriage since it could be terminated without legal action * * *."

This quoted statement is a classic example of circular reasoning. Petitioner's attorney on August 16, 1960, requested of the Director that he state specifically the basis for denial of the claim. The position of the Board is clearly set out in its reply:

"Sep 1 1960
"Mr. Doyle H. Gaither
"Gaither, Brewster and Hoy
"Attorneys at Law
"Suite 1003, Bassett Tower
"El Paso, Texas
"In reply refer to
"R.R.B. No. D–359135
"Dear Mr. Gaither:
"We have your letter of August 16, 1960, in the interest of Mrs. Librado Hinojos.
"The requisites to the establishment of a common-law marriage in the State of Texas include *good faith at the inception of the relationship on the part of at least one of the partners or a new agreement after the removal of any impediment. Good faith means an intent to marry and the belief that there is no impediment to marry.*

"Both Librada Ortega and Luis Hinojos were aware of the impediment of his marriage to Cornelia at the time they began living together. After the removal of the impediment by divorce Luis Hinojos refused to marry Librada according to her own statement. When she questioned him concerning the matter he kept putting it off. That Librada did not consistently use his name but received mail as Librada Ortega and in fact referred to Luis as divorced and to her own name as Librada Ortega in furnishing information for the deceased employee's death certificate.

"In view of the facts outlined above, it is evident that the requisites for a valid common-law marriage did not exist in the case of Librada Ortega and Luis Hinojos and Librada Ortega cannot be considered as having legal status as the deceased employee's widow for the purpose of receiving benefits under the Railroad Retirement Act as his widow.

"Very truly yours,
"Robert H. LaMotte
"Director of Retirement Claims
"COCONNOR, Martin
"August 21, 1960"
[Emphasis added.]

4. "FINDINGS OF FACT
"Based on the evidence of record, the Board makes the following findings of fact:

"1. The employee died in El Paso, Texas, where he was domiciled, on July 9, 1959.

"2. Appellant and the employee began living together in 1958, at which time the employee had a living wife from whom he had not been divorced; and appellant knew that the employee was married at the time she began living with him.

"3. On February 3, 1959, a decree of divorce was granted, terminating the mar-

gal conclusion was based upon a misconception of the Texas law governing common-law marriages. The Board obviously found that there could be no marriage because there was no "new" agreement to be married made after Hinojos' impediment to marriage had been removed by his divorce from Cornelia.[5] This simply is not the law of Texas.

"The essential elements of a [Texas] common law marriage are: 1) an express or implied agreement to enter into marriage; 2) cohabitation as husband and wife; 3) holding themselves out to the public as being married. Grigsby v. Reib, 105 Tex. 597, 153 S.W. 1124, L. R.A. 1915E, 1; Smith v. Smith, Tex.Civ. App., 257 S.W.2d 335, W/E Ref. NRE." Cain v. Caine, Tex.Civ.App., 1958, 314 S. W.2d 137, reh. den., June 5, 1958. The agreement need not be express; it may be implied. It ordinarily may be inferred from evidence establishing the second and third elements. Shelton v. Belknap, 1955, Tex.Civ.App., 1955, 282 S.W.2d 682; Ray v. Thompson, Tex.Civ.App., 1953, 261 S. W.2d 195. Of course, no marriage can come into existence so long as a legal impediment to the marriage exists, but here such impediment was removed when Hinojos was divorced from Cornelia.

In Consolidated Underwriters v. Kelly, Comm. App.Tex., 1929, 15 S.W.2d 229, affirming Kelly v. Consolidated Underwriters, Tex.Civ.App.1927, 300 S.W. 981, the question before the court was whether there was a common-law marriage. Louisa, the claimant, lived with Joe, but was married to another man and had not been divorced from him. They intended to be man and wife and "except for the fact that Louisa had a living husband, the law would have declared their status to be that of a common-law marriage." Page 229 of 15 S.W.2d. Her husband died, but neither Louisa nor Joe knew of the fact, and then Joe died. Louisa did not know of her first husband's death until after Joe died. The death of the other man "made no change in their relations. They made no new contract in relation thereto." (Page 229 of 15 S.W.2d.)

The court held that the evidence justified a finding of an agreement and affirmed the Court of Civil Appeals' reversal of the judgment entered on a directed verdict by the trial court. It approved the statement of the Court of Civil Appeals that "[a]s they desired marriage, and intended their relations to be that of husband and wife, this *continuing intent* must be recognized during all the time they cohabited as such, and therefore the agreement * * * made them husband and wife *from the moment the bar to their lawful marriage was removed."* (P. 230 of 15 S.W.2d.) [Emphasis added.] This case was most recently cited with approval by the Supreme Court of Texas in Shelton v. Belknap, supra. It was there held that if a man and woman, who had been living together illicitly theretofore, agreed to be man and wife and cohabited and held each other out to the public as man and wife, there was a valid common-law marriage even though the parties mistakenly believed that they would have to so live together for six months before the marriage was "legal." "The agreement that they would then and there become man and wife is not conclusively negated by M.A.'s misunderstanding of the law." (P. 685 of 282 S.W. 2d.) [6]

---

riage of the employee and his wife, Cornelia.

"4. *On or after February 3, 1959*, the employee and appellant did not enter into a marriage agreement.

"5. Appellant and the employee did not on or after February 3, 1959, hold themselves out to the public as husband and wife.

"6. Appellant was not married to the employee and is not his widow within the meaning of the Act.

"7. The lump-sum benefit awarded to appellant as the payer of the burial expenses of the employee is the only benefit to which she is entitled under the Act by reason of his death.

"DECISION

"The decision of the Appeals Council is sustained." [Emphasis Added.]

5. See letters set out in Footnote 4.

6. Cf. Brown v. Brown, Tex.Civ.App., 1938, 115 S.W.2d 786 (dictum) to the effect

It was held in McIlveen v. McIlveen, Tex.Civ.App., 1960, 332 S.W.2d 113, that there is nothing necessarily inconsistent with an agreement presently to enter into a common-law marriage and an intention later to have performed a ceremonial marriage. It is obvious that if petitioner and Hinojos were "husband and wife from the moment the bar * * * was removed," Consolidated Underwriters, supra, 15 S.W.2d at 229, the later ceremonial marriage would be surplusage, as far as the law is concerned.

 The proof here is very strong that petitioner and Hinojos cohabited, and held themselves out, as man and wife. The continuance of the prior agreement can be inferred from this same evidence, and, though it is not our function to re-evaluate the evidence, it is clear that petitioner made out a very strong case as to all elements of a common-law marriage.

In disposing of this case we cannot say, however, that there is not sufficient evidence to support a conclusion that there was no marriage. Although it is apparent from the record in this case that the Board applied incorrect principles of law to the evidence before it, we cannot say what conclusion it would have reached if it had applied the correct principles. Part of the difficulty with this case is that many of the so-called "Findings of Fact" set out in the Board's opinion are not findings of fact, but are legal conclusions. E. g., "Appellant was not married to employee * * *" is a conclusion of law. Inasmuch as administrative decisions, like matters heard before a court sitting without a jury, are not decided by a separate fact-finder applying legal instructions supplied by a court, it is important that the findings of fact upon which a decision is reached be set out explicitly if the reviewing court is to decide whether a particular error of law contributed to the result reached. This is especially so in matters such as these in which there are no formal pleadings framing the is-

sues to be decided. The loose practice evidenced here a deciding all the issues, legal and factual, as "Findings of Fact" and of concluding simply that petitioner will not get her money, does not assist the court in delineating error, if any, and assaying its effect upon the whole decision. Cf. Williams v. Ribicoff, 5 Cir., 1963, 323 F.2d 231.

 Inasmuch as this Court cannot tell, from the record, or the general and vague "Findings of Fact" or "Decision", whether the application of proper rules of law would have led the Board to a contrary result, this case cannot be finally disposed of here. The petition for review is granted, the decision of the Board is reversed, and the case is remanded for disposition not inconsistent with this opinion. So ordered.

that if the relationship is "meretricious in its inception, the evidence that it later

became lawful would have to be positive and satisfactory * * *."