Randolph W. COPELAND, Petitioner,

v.

RAILROAD RETIREMENT BOARD, Respondent.

No. 20130.

United States Court of Appeals
Fifth Circuit.

Jan. 29, 1964.

Thomas N. Crawford, Jr., Birmingham, Ala., for petitioner.

Myles F. Gibbons, Gen. Counsel, Railroad Retirement Board, Chicago, Ill., David B. Schreiber, Associate General Counsel, Railroad Retirement Board, Edward E. Reilly, David M. Goldman, Railroad Retirement Board, Chicago, Ill., of counsel, for respondent.

Before CAMERON and WISDOM, Circuit Judges, and DeVANE, District Judge.

CAMERON, Circuit Judge.

This appeal involves the question of whether there was substantial evidence to support the Railroad Retirement Board's finding that the petitioner's physical or mental condition was not such that he was unable to engage in any regular employment.

Petitioner, a forty-six year old railroad laborer, applied for an annuity under § 2(a) (5) of the Railroad Retirement Act,[1] on the ground that his "permanent physical or mental condition" was such that he was "unable to engage in any regular employment." He worked for the Alabama Great Southern Railroad Company as a "bridge builder," from October 6, 1941 to September 19, 1958, having been disqualified for service by a medical officer of the Railroad. Petitioner has a fifth grade education, and has a history of only menial arduous work. Since petitioner is less than sixty years of age and is credited with less than twenty years of service as an employee under the Railroad Retirement Act, it is impossible for him to be eligible for any type of annuity other than the one under § 2(a) (5) of the Act.

Application for an annuity was filed on November 14, 1958. A succession of doctors employed by both the Board and the petitioner found that he was highly nervous, underweight, arthritic, deaf in left ear, and had several other physical disabilities. Psychiatric tests revealed a congenital low intelligence, but no markedly identifiable mental disorders other than extreme apathy. Several doctors expressed an opinion that the petitioner was unfit to continue performing heavy manual labor.

The test here is whether the claimant is capable of engaging in "any" gainful employment. Subsequent to the filing of the application petitioner was accorded a general physical examination by a designated Board examiner, Dr. M. P. Hughes. Dr. Hughes reported his diagnosis as "arthritis right elbow, shoulder and spine," and a loss of hearing in the left ear; on this medical evidence he concluded that petitioner was not then able to work at his last occupation or some other type of work, and that it was questionable whether his condition could be expected to improve, or that he would be able in the future to do any type of work.

The Director of Retirement Claims arranged for petitioner to undergo an orthopaedic examination at the V. A. Hospital in Birmingham on December 23, 1958, where it was concluded that petitioner was not permanently disabled from work in all regular employment. The report of the examination by Dr. Cas Reagan stated that the petitioner was a "small, slender fellow, who weighed 122 pounds;" that petitioner stated his weight had been between 136 and 140 pounds a year earlier; that petitioner had many complaints, especially with respect to the right shoulder, right elbow and lower back; and that " * * * there is no acute joint tenderness today. However, he is unable to elevate his right arm above the level of his right shoulder, due to arthritis, which he claims in his right shoulder. There is no periarticular tenderness but definite limitation of motion. The lumbo-sacral region, bending forward he can reach about 6" below the knees and there is a slight amount of muscle-rigidity in the lower lumbar region. The lateral movements are limited and so are the backward movements. He cannot flex his right elbow due to pain. He complains considerably of the right knee and says one week ago it was swollen but apparently today there is no swelling but there is limitation of movement and pain on extension and flexion of the right knee * * *." The X-rays taken at the V. A. Hospital of the right elbow, right shoulder and spine revealed general normality in the bones, joints and interspaces with changes only minimal where they occurred.

Petitioner's family physician, Dr. C. D. Killian, stated: "This man will not be able to return to his employment nor will he be able to do any type of manual labor again and, as I understand it, this is his only qualification. In my professional judgment I would classify him as being totally and permanently disabled."

Dr. A. I. Chenoweth stated, "Mr. Copeland is totally and permanently disqualified for any gainful employment by rea-

1. 45 U.S.C.A. § 228b(a) (5).

son of arthritis and anxiety tension state with an inadequate personality and an inactive duodenal ulcer."

Nearly a year after petitioner's application had been filed he underwent a neuropsychiatric examination which showed a mental age of eight years with final diagnosis of (1) mental deficiency and (2) chronic anxiety reaction. On January 12, 1960, Dr. John N. Chitwood of Birmingham, Alabama examined petitioner and concluded, "In my opinion this man is permanently and totally disabled to perform any type of work." Dr. Glenn Barnes was of the opinion that "Mr. Copeland does have osteoarthritis but not of sufficient degree to totally incapacitate him. A psychiatric evaluation is, however, suggested, as I feel that he probably has a personality defect." A general and neuropsychiatric examination was conducted by Dr. Henry Spira on November 24, 1959. Dr. Spira reported, "There is no objective evidence of swelling, edema, deformity, ankylosis, or any muscular atrophy * * *. There is no objective evidence of any arthritic change or any muscular weakness or atrophy. Subjectively, however, the patient complains of severe pain on flexion of the trunk and he is hardly able to make a fist or stand on his heels or his toes. There is a marked difference between subjective complaints and objective findings. * * * The only abnormality found with respect to the nervous system was complete deafness of the left ear. * * *" Dr. Spira further stated "Perhaps the most outstanding factor in the patient's general attitude was the fact that he exaggerated his symptoms."

After a psychiatric evaluation on July 18, 1961, Dr. James Sussex summarized that "this man is considered to show impairment of intellectual functions and of general adjustment to a degree inconsistent with any mental, emotional or other psychiatric disorder, disease or defect which can be demonstrated in this single examination."

Petitioner, citing decisions under the Social Security Act,[2] and contending that the standards which the courts have applied in interpreting the disability provisions under that Act apply also in the interpretation of the disability provisions of the Railroad Retirement Act, argues that there was not substantial evidence to support the Railroad Retirement Board's finding that petitioner's physical and mental condition was not such that he was unable to engage in any regular employment. It is claimed on behalf of the Board that the tests provided by the two Acts are not identical. § 11 of the Railroad Retirement Act,[3] under which this action was brought, incorporates by reference the judicial review provisions of the Railroad Unemployment Insurance Act, 45 U.S.C. § 355(f), which provides that: "The findings of the Board as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive."

The standards prescribed in the Social Security Act[4] are of like import: "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, * * *."

A painstaking examination of the evidence, some of which has been discussed supra, leads us to the conclusion that the finding of the Board was not supported by substantial evidence. The decision of the Railroad Retirement Board is, therefore, reversed and the case remanded for such proceedings as are consistent with this opinion.

Reversed and remanded.

[Judge DeVANE participated in the hearing and decision of this case, but died before the foregoing opinion was written.]

2. E.g., Butler v. Fleming, 5 Cir., 1961, 288 F.2d 591; Ferran v. Flemming, 5 Cir., 1961, 293 F.2d 568; and cf. the opinion of Judge Rives, sitting as District Judge of the Middle District of Alabama, in Aaron v. Fleming, 1958, 168 F.Supp. 291.

3. 45 U.S.C. § 228(k).

4. 42 U.S.C. § 405(g).