Frank G. KURKA, Petitioner,

v.

UNITED STATES RAILROAD RETIREMENT BOARD, Respondent.

No. 78–2328.

United States Court of Appeals, Fifth Circuit.

April 8, 1980.

Toole, Taylor, Moseley, Milton & Joyner, Joseph P. Milton, Jacksonville, Fla., for petitioner.

Dale G. Zimmerman, Gen. Counsel, Arthur A. Arfa, Gen. Atty., Railroad Retirement Bd., Chicago, Ill., for respondent.

Before GEE, FAY and VANCE, Circuit Judges.

VANCE, Circuit Judge:

This is a petition for review of the Railroad Retirement Board's decision[1] denying petitioner's claim under the Railroad Retirement Act of 1937 as amended, 45 U.S.C.A. § 228a *et seq.* (1972) (the Act), for employee annuity payments and ordering that he repay $11,779.50 received by him from the Board. The relevant events predated the effective date of the Railroad Retirement Act of 1974, 45 U.S.C. § 231 *et seq.*, so this discussion concerns only the former Act. We reverse.

Kurka worked in employment covered by the Act for 32 years, and contributed into the retirement fund throughout that entire period. He reached age 65 on April 1, 1973. At that time he was employed as a general solicitor for the Seaboard Coast Line Railroad. He elected to retire from the railroad on April 30, 1973, and on May 16, 1973 he applied for employee annuity payments. On June 1, 1973, he accepted part-time employment, "of counsel," with a Jacksonville, Florida law firm. While Kurka's annuity application was being processed, the Board discovered from Social Security records that since 1970 he had received some $50.00 per month from Orange Park Kindergarten, Inc., and that those payments continued following his railroad retirement on April 30, 1973. On this basis the Board denied him annuity payments. When this problem came to Kurka's attention, he discontinued his kindergarten connection, so advised the Board, and his annuity payments began. Subsequently, however, the Board discovered that before Kurka terminated his kindergarten connection he had begun work at the law firm. On the basis of that determination, the Board concluded that he had never become eligible to receive his annuity. By letter dated July 16, 1975, the Board advised Kurka that his annuity was being suspended and requested him to repay the sum received by him up to that date. The Board's appeals referee upheld that action, and the Board affirmed his decision on March 7, 1978.

Our review centers on the nature of Kurka's relationship with the kindergarten and the reason for his receipt of a $50.00 monthly payment. There is no dispute regarding the relevant facts. Some years prior to 1973, Kurka incorporated the kindergarten, which he and his sister-in-law owned. The two of them held all of the corporate stock. He also handled a significant tax case for the kindergarten but did not take out any fee. Instead, the kindergarten placed him on a $50.00 per month retainer. The retainer was to cover past services, future availa-

---

1. Review by this court is pursuant to 45 U.S.C.A. § 228k (1972) (recodified in substantial part as 45 U.S.C. § 231g), which by reference adopted the review provisions of the Railroad Unemployment Insurance Act, 45 U.S.C. § 355(f).

bility, plus provision of advice as required and incidental legal services as needed. Neither Kurka nor his sister-in-law actually regarded him as a kindergarten employee. He was not under the authority, direction or supervision of the kindergarten's management. He never worked on the kindergarten premises, and was never integrated into the staff of the school.

■ The Board correctly argues that, to become eligible for an annuity, an employee must retire from his employment, both railroad and non-railroad. That is the precise holding in *United States v. Bush*, 255 F.2d 791 (3d Cir. 1958), the case on which the Board primarily relies:

> [I]f an employee has more than one employer at the time of his retirement he must stop performing compensated service to all.

*Id.* at 793. After being fully retired for thirty days, however, an employee may undertake other retirement employment. Indeed, Congress specifically contemplated that and encouraged it by statutory formulation. The *Bush* court explained as follows:

> A compromise was arrived at whereby Congress gave expression both to the consideration that retirement benefits should be confined to those genuinely retired and to the countervailing consideration that some supplementation of retirement income through post retirement employment might be desirable. The former principle was expressed in the requirement of an absolute cessation of all gainful employment and the relinquishment of all right to return to such employment if such right existed, viz., Sections 2(a), 2(b); the latter was expressed in the provision permitting such employment as the annuitant might be able to find from sources other than the person or persons by whom he was employed at the time his annuity began to accrue . . . .

*Id.* at 794.

The statutory language on which the Board relies is found in Section 2 of the 1937 Act:

> (a) The following-described individuals . . . shall, subject to the conditions set forth in subsection (b)–(d) of this section, be eligible for annuities *after they shall have ceased to render compensated service to any person*, whether or not an employer as defined in section 228a(a) of this title (but with the right to engage in other employment to the extent not prohibited by subsection (d) of this section):

> .     .     .     .     .

> (d) No annuity shall be paid with respect to any month in which an individual in receipt of an annuity hereunder *shall render compensated service to an employer or to the last person by whom he was employed prior to the date on which the annuity began to accrue.* . . .

45 U.S.C.A. § 228b(a) & (d) (1972) (emphasis added) (recodified in substantial part by the 1974 Act as 45 U.S.C. § 231a(a) & (e)).

Kurka rests his claim on the contention that he was not a kindergarten employee within the meaning of the statutory definition:

> (c) An individual is in the service of an employer . . . if (i) he is subject to the continuing authority of the employer to supervise and direct the manner of rendition of his service, or *he is rendering professional* or technical *services and is integrated into the staff of the employer*, or he is rendering, on the property used in the employer's operations, other personal services the rendition of which is integrated into the employer's operations, and (ii) he renders such service for compensation, or a method of computing the monthly compensation for such service is provided in section 228c(c) of this title

> .     .     ..

45 U.S.C.A. § 228a(c) (1972) (emphasis added) (recodified in substantial part by the 1974 Act as 45 U.S.C. § 231(c)). Correct resolution of the matter requires consideration of both aspects of the statutory definition—actual employment and compensation—as they apply to the facts before us.

■■ The standard of review, well established in this circuit, is that we affirm the Board if its finding of fact is supported

by substantial evidence and its decision is not based on an error of law. *Jenkins v. Railroad Retirement Board*, 458 F.2d 1359 (5th Cir. 1972); *Boos v. U. S. Railroad Retirement Board*, 448 F.2d 431, 433 (5th Cir. 1971); *Patton v. Railroad Retirement Board*, 313 F.2d 434, 436–37 (5th Cir. 1963).[2]

By considering the kindergarten as Kurka's employer, the Board concluded that he never retired. His law firm employment began before he terminated the kindergarten retainer. Thus the kindergarten connection was held to have bridged his railroad and non-railroad employments and he never became eligible for his annuity to begin. The Board takes an inconsistent position in hewing close to the Act's technical requirements for eligibility on the one hand and virtually ignoring the statutory definition of an employee on the other.

■■■ Our rejection of the Board's holding is based on our conclusion that it misapplied the statutory requirements to the undisputed facts, both with respect to whether Kurka held employee status and whether he performed compensated service for the kindergarten. The facts clearly do not conform to the requirements of 45 U.S.C.A. § 228a(c) (1972) that are specifically applicable to whether Kurka was "in the service of an employer." The factors considered significant by the Board were that Kurka received his retainer fee covering the period in question, that he was a corporate officer and that he was listed on tax forms as an employee. The factors may be relevant but under the statute they clearly are not decisive. Employees do not lose their status as such simply because they are corporate officers. Attorneys and even secretaries in attorneys' offices, however, frequently are listed as corporate officers. They do not ipso facto become employees within the

meaning of the Act. There is no substantial evidence that Kurka was an employee of the kindergarten.

On the correlative point the Board's conclusion and its finding of fact are equally unsatisfactory. Because Kurka received compensation covering the period from April 30, 1973 to June 1, 1973, the Board has found that he must have rendered "compensated service" under the statute. There is no substantial evidence, indeed no evidence whatever, that he performed any service at all during the period. Legal retainers cover a variety of things. At times they may cover an agreed level of regular and recurring services. At other times they may be more directly related to past services rendered. Frequently, perhaps typically, they cover only an agreement by the attorney to make himself available to perform future services when and if they are required. In Kurka's case the agreement was for a combination of reasons, but, by itself, it does not support a finding that he performed any services during the period in question.

■■■ If compensated services as an employee had been performed, the Board would still be faced with application of the *de minimis* principle. In its opinion the Board asserts that it has not applied the principle since the third circuit's opinion in *United States v. Bush*, 255 F.2d 791 (3d Cir. 1958), which it reads to forbid such treatment. We doubt that the Board's reading of *Bush* is supportable. *Bush* held two jobs at the time of his retirement from the railroad. In addition to his railroad employment, Bush worked an average of thirty-five hours per week for a paper company. The third circuit held that he had to cease performing compensated service to both employers to become eligible for annuity

---

2. In *Patton* we stated,

   Although we are bound to the facts as found by the Board "if supported by evidence," we are in no manner bound in ascertaining the correctness of the Board's legal conclusions.

   313 F.2d at 437. Our review under the applicable standard has resulted in reversals when the factual findings of the Board were not supported by substantial evidence, *see Copeland v. Railroad Retirement Board*, 327 F.2d 348, 350 (5th Cir. 1964), when its decision was based on errors of law, *see Hinojos v. Railroad Retirement Board*, 323 F.2d 227, 231 (5th Cir. 1963), when the Board has been guilty of procedural irregularities, *see Matthews v. Railroad Retirement Board*, 472 F.2d 1176, 1177–78 (5th Cir. 1973), and when the Board has not afforded a fair hearing as the Act requires, *see Robbins v. U. S. Railroad Retirement Board*, 594 F.2d 448, 451 (5th Cir. 1979).

payments. The facts did not raise a *de minimis* question and the court did not deal with it. Our own holding in *Davenport v. Railroad Retirement Board*, 453 F.2d 185 (5th Cir. 1972), explicitly dealt with a *de minimis* contention.[3] Davenport received a $2,400 per year salary as an alderman of the city of Macon, Georgia at the time of his railroad retirement. This court held that $2,400 was not *de minimis*. *Id.* at 188. Its consideration of the question, however, may imply that the principle would be applicable under other circumstances.

Because the record does not support the finding that Kurka rendered any compensated services for an employer between April 30, 1973 and June 1, 1973, the conclusion that he is not entitled to his employee annuity payments was erroneous. The petition is granted and the case reversed and remanded to the Railroad Retirement Board with directions that Kurka be awarded such payments based on his retirement on April 30, 1973.

REVERSED and REMANDED.

---

**3.** In *Davenport* it was pointed out that the Board formerly applied the *de minimis* principle in the case of persons who were elected public officials and received compensation in small amounts for such service. 453 F.2d at 188. The Board now claims that when Congress ratified that policy by adopting the 1974 Act, 45 U.S.C. § 231a(e)(1), it impliedly ap-

proved the Board's refusal to apply the principle as to other persons. That peculiar view of the congressional action is questionable and, if correct, does not establish a rational basis for discrimination in favor of political office holders as compared with other former railroad employees.