### MANIRE v. BURT et al.

No. 8721.

Court of Civil Appeals of Texas. Austin.

Oct. 26, 1938.

Rehearing Denied Nov. 16, 1938.

**632**

Murphy & Leslie, W. A. Johnson, and I. J. Curtsinger, all of San Angelo, for appellant.

Kerr & Gayer, of San Angelo, for appellees.

McCLENDON, Chief Justice.

This case involves the right of Mrs. Fidelia Manire (appellant) to letters of administration upon the estate of L. W. Manire, deceased. Mrs. Manire asserts that right on the ground that she is the surviving common law wife of decedent, that relation having been established after she and decedent were divorced on August 3, 1928. The probate court appointed her administratrix; and the temporary administrator appealed to the district court; which appeal was dismissed for lack of an appeal bond. This court affirmed the judgment of dismissal (Stephenson v. Manire, 93 S.W.2d 559), and the Supreme Court refused writ of error. The order of appointment was again brought to the district court for review by certiorari, at the instance of heirs at law of decedent, and the case tried upon its merits to the court without a jury. The trial court's judgment set aside the order of appointment upon the holding that Mrs. Manire was not the common law wife of decedent. The instant appeal is by Mrs. Manire from this judgment.

The controlling question here is whether the evidence, considered either independently or in conjunction with the trial court's fact findings, conclusively establishes that Mrs. Manire was the common law wife of decedent. Our jurisdiction to review the evidence factually is not invoked, and the question for decision is one of law only.

We have reached the conclusion that this question should be answered in the negative, and therefore the trial court's judgment should be affirmed.

We make the following general statement by way of introduction to the trial court's pertinent findings:

While the record does not show the exact or approximate age of Mrs. Manire or decedent, it is quite evident that at the time of the latter's death (October 29, 1933) they were both well advanced in years. They first became acquainted in San Angelo about 1915. At that time Mrs. Manire was the widow of a deceased Confederate soldier and drew a pension on that account. From then on she was in decedent's employ as housekeeper, lived under the same roof with him, and helped him in his business—that of a grocery merchant. They were married in 1921, and divorced August 3, 1928, in a suit filed by decedent and contested by Mrs. Manire. She appealed to this court, but the record was not filed and the judgment was affirmed on certificate January 9, 1929; in which proceeding Mrs. Manire through her attorneys waived issuance of notice and agreed "that this case may be affirmed on certificate at the earliest time convenient to the court." November 2, 1928, they executed an instrument by which Mrs. Manire was given a life estate in their residence property and $500 in cash, and decedent was given all other property held by decedent or in his name, Mrs. Manire releasing all her claim therein "by virtue of having been heretofore married to said L. W. Manire." Each acknowledged this instrument on different dates and before different notaries, each acknowledgment being on the form prescribed for a single person.

Mrs. Manire's claim that she thereafter became the common law wife is predicated upon the assertion that after she returned home from the divorce trial decedent came home and told her that he did not get a divorce and they would just "keep on as they had been"; that she believed and relied upon this statement; that they did continue openly and reputedly to live as man and wife until his death; that she would not have so lived with him had she known the divorce was granted; and that she did not learn that it was granted until shortly before his death.

The trial court's findings pertinent to the question before us were:

"8. That it was generally known in the community where the Manires lived in August, 1928, that L. W. Manire had obtained a divorce from Mrs. Fidelia Manire.

"9. That after L. W. Manire obtained a divorce from Mrs. Fidelia Manire in 1928, he and the said Fidelia Manire did live together most, if not all the time, until the death of L. W. Manire in the year 1933.

"10. That after L. W. Manire was divorced from Mrs. Fidelia Manire in the year 1928, he presented Mrs. Fidelia Manire to some people as his wife; to others he stated that she had been his wife but that he was now divorced from her.

"11. That after the divorce was granted to L. W. Manire from Mrs. Fidelia Manire in the year 1928, until his death in the year 1933, he provided for her, and she assisted him in the store during all of said time.

"12. Some months before the death of L. W. Manire he moved from the house he and Mrs. Fidelia Manire had occupied to a room adjoining his store building and remained there until his death.

"13. That after L. W. Manire was divorced from Mrs. Fidelia Manire in the year 1928, there was no agreement between them to again become husband and wife.

"14. That if L. W. Manire on the day the divorce case was heard in the 51st District Court of Tom Green County stated to Mrs. Fidelia Manire that he had or did not secure a divorce, she then knew or soon thereafter learned that such statement was not true."

■ The legal status of marriage arises of necessity out of agreement; that is, a contract. Where the legal formalities are observed the agreement, of course, is express. In a common law marriage, which imports absence of the legal formalities, the agreement need not be express, but may be implied or presumed from facts and circumstances.

■ The essential elements of a common law marriage are "an agreement to become husband and wife, a living together pursuant thereto as such, and a holding out of each other to the public as husband and wife." Martinez v. Martinez, Tex.Civ. App., 6 S.W.2d 408, 409. As stated in 28 Tex.Jur., p. 715: "The parties must, of course, have actually contracted for present marriage, and its seems clear, under the decisions, that this contract must have been consummated by a living together as husband and wife. Just what act or acts of cohabitation will suffice to consummate the marriage has never been stated—nor probably can it be."

Upon this latter subject see 28 Tex.Jur. p. 716, § 19.

The Texas cases upon the general subject of common law marriage are quite numerous; but a review of them would not be useful here. The above statement of the elements essential to the relation are generally accepted and suffice for our present purposes.

■ The trial court found there was no agreement and consequently no marriage. This must be construed to embrace an implied as well as express agreement. The testimony of Mrs. Manire furnished the only evidence of an express agreement, and clearly this was not conclusive of that issue. Appellant contends that the evidence conclusively established an implied agreement, in any event when considered with the court's findings, if not in fact when considered alone. De Beque v. Ligon, Tex.Com.App., 292 S.W. 157, is cited as controlling in this case. We can probably best present our views regarding the instant case by noting some essential points of difference between the two cases. In the De Beque Case the formal marriage was in 1883, and the spouses lived together continuously until the wife's death in 1923. In 1905 an uncontested divorce was granted the wife. The uncontradicted testimony of disinterested witnesses established that this was virtually a consent decree for the sole purpose of enabling the wife to deal with property in her own name. In 1917 they executed an instrument adopting a child, in which they recited that "We adopt said child under the laws of the State of Texas," and pledged themselves to be "kind and affectionate parents" and "to be to said child the same parents as if she were our child, by nature." The acknowledgment of the wife was in the usual form of that of a married woman, reciting specifically that she, "wife," etc., was "examined privily and apart from her husband." There was an uninterrupted living together as man and wife for forty years during which time there was a continuous holding out of themselves to the public as man and wife. The only evidence relied on to show lack of agreement was that the wife had from time to time executed conveyances as a single woman, had at one time brought a suit as such, and several people testified that they "had observed nothing to cause them to believe that these two parties were husband and wife." The Commission of Appeals held that the evidence conclusively established a common law marriage, contracted after the divorce.

■ The following essential points of variance in the instant case may be noted:

The divorce suit was contested by Mrs. Manire, an appeal was taken by her, a compromise of property rights was executed in which the decree was expressly recognized, and later it was affirmed by agreement. The petition for divorce was predicated upon two grounds, abandonment for more than three years and cruel treatment. As to the first ground the follow-

ing question and answer is taken from Mrs. Manire's testimony in the divorce trial: "Q. Did you make the statement to Frank Neilon that you had not lived with him as his wife for about four years? A. No, sir, because I had never kept track of the time."

While the decree did not show upon what ground it was based, it is clear that the relations of Mrs. Manire and decedent were not congenial—so much so that he wanted the bonds of matrimony legally severed—and that the trial court found sufficient ground for such severance, even against the strenuous protest of Mrs. Manire. The trial court made no finding upon whether decedent told Mrs. Manire just after the decree was rendered that there had been no divorce; but it did find that if he made that statement she knew then or shortly thereafter that it was not true. The evidence is ample to support this finding, the effect of which was to eliminate any express agreement of marriage. Such a statement on decedent's part would have constituted a gross fraud, no plausible purpose for which is afforded by the record. The trial court manifestly regarded such statement, if made, immaterial, since it was rendered innocuous by reason of Mrs. Manire's then or shortly thereafter acquired knowledge of its falsity. To imply a subsequent agreement of marriage would be inconsistent with Mrs. Manire's positive testimony that she would not have lived with decedent had she known that the divorce was granted.

■ It may be conceded that, regardless of such testimony by Mrs. Manire, the evidence was sufficient, even preponderatingly so, to support a fact finding that a subsequent implied agreement of marriage was made. Our jurisdiction to weigh the evidence from this viewpoint is not invoked. The court's finding that there was no agreement to marry negatives the existence of a common law marriage; and that finding must stand unless we can say as a matter of law that the uncontradicted evidence construed with the court's other findings conclusively establishes an implied contract of marriage.

The court's findings relied upon as conclusively showing a common law marriage are the 9th, 10th, and 11th, to the effect that: (9) after the divorce Mr. and Mrs. Manire "did live together most, if not all the time, until" the former's death; (10) decedent presented Mrs. Manire "to some people as his wife; to others he stated

that she had been his wife but that he was now divorced from her"; and (11) he provided for her and she assisted him in his store from the time of the divorce until his death. While the evidence amply supports these fact findings its conclusive effect does not go further. There was much testimony, pro and con, on issues 9 and 10. It was the peculiar province of the trial court to weigh this testimony, giving credence, discounting or rejecting as the court deemed proper. To detail the testimony would serve no useful purpose. The credibility of the witnesses and the weight to be given to their testimony were for the trial court's determination, and do not concern this court.

If we consider the extreme age of the parties, their relations prior to their formal marriage, the three above findings are not so inconsistent with want of an agreement of marriage, as conclusively to establish such agreement. It is to be observed that the court did not find that the "living together" was as husband and wife. If essential to support the judgment, such finding must be construed to the effect that the living together was not as husband and wife; since otherwise there would be a conflict between the 9th and 13th findings; and the rule is that the findings must be reconciled where possible. But we do not think it necessary so to construe the 9th finding. The three findings (9th, 10th, and 11th) are not in irreconcilable conflict with the 13th, which latter negatives the existence of a common law marriage. Mrs. Manire knew of the divorce, her testimony to the contrary notwithstanding. She testified unequivocally that she would not have lived with the decedent had she known of the divorce. Decedent's presenting Mrs. Manire as his wife was not uniform. It was generally known in the community that they were divorced, and he at times stated that they had been married, but were now divorced. Some months after the divorce she executed a conveyance in which she expressly recognized the divorce, and later consented to—in fact requested—its affirmance on certificate. However persuasive one might regard the evidence when considered factually, it did not conclusively establish an implied agreement of marriage or all the other elements of a common law marriage.

■ The remaining assignments of error relate to the action of the court in overruling six paragraphs of appellant's motion for new trial predicated upon new-

ly discovered evidence. The statement of facts covering the hearing upon the motion was not filed in this court in the statutory time and no. reasonable excuse for the delay was shown. We therefore overruled a motion for certiorari to complete the record in this regard. We still adhere to that ruling. Specifically: the motion for new trial was overruled September 24, 1937; the record filed November 24, 1937; the cause set on July 6, 1938, for submission on September 21, 1938; and the motion for certiorari was not filed until August 1, 1938. However, an examination of the proffered statement of facts reveals that the trial court did not abuse its discretion in overruling the motion. One paragraph of the motion sought to have Mrs. Manire correct her testimony in certain particulars. Clearly the court did not abuse its discretion in declining to reopen the case on that account. Another paragraph embraced evidence of her attorney in the divorce suit. There was no reasonable excuse for not presenting this testimony on the trial. The other paragraphs relate to four witnesses whose testimony was but cumulative of other testimony in the record. It would have added nothing except a little more volume to the testimony already before the trial court. The testimony constituted merely additional conversations with decedent regarding his marital relations, along the same lines as that of other witnesses. Moreover, one of the witnesses was a nurse who had nursed Mrs. Manire, and the others were people who had at one time or another lived in the neighborhood, or traded or otherwise had contact with decedent. If a case of this character were required to be reopened as a matter of law every time a new witness was discovered who at some time had had a pertinent conversation with decedent, the litigation might never end. It was the duty of appellant to make every reasonable effort to ascertain what witnesses would establish her case, the very nature of which depended in large measure upon what decedent may have told those with whom he had come in contact.

The trial court's judgment is affirmed.

Affirmed.

## On Appellant's Motion for Rehearing.

Appellant challenges the correctness of the italicized portion of the following quotation from our original opinion: *"They (Mr. and Mrs. Manire) first became acquainted in San Angelo in 1915. At that* time Mrs. Manire was the widow of a deceased Confederate soldier and drew a pension on that account. *From then on she was in decedent's employ as housekeeper, lived under the same roof with him, and helped him in his business*—that of a grocery merchant."

Mrs. Manire's answer in the divorce suit alleged: "For many years prior thereto (her marriage in 1921) they (she and Mr. Manire) had combined their capital, labor and skill and had engaged in mercantile business in San Angelo, which business relation had existed since July, 1915. That from the beginning of said relation this defendant has devoted her entire time, means and energy in the management of said mercantile business and to the accumulation of said property described in said petition."

The answer further alleges various sums she had put into the business derived from her Confederate pension, a Liberty Bond, sale of a cow, butter and eggs, etc. As to the latter, the allegation is: "That from the beginning of their relationship she sold butter and eggs in at least the sum of $100 a year, and that the money therefrom was paid to plaintiff."

The record does not specifically show that during all the time from 1915 to 1921 she lived under the same roof with him employed as his housekeeper. She did testify, however, that for awhile she cooked for him at $5 a week. Her testimony is very obscure in many respects, and difficult to interpret. At one place (referring to the pre-nuptial period) she testified that Mr. Manire told her: "If you can get Joe Tyler to buy in with me here, I will build a good, nice room for you; that is the way the store became extended; I saw Joe Tyler and he bought in and gave him $1000 besides an interest in five head of cattle, and that was the enlargement."

This record showing evidences a very intimate (not improper) relation between Mr. and Mrs. Manire for six years next preceding their marriage, which was the only purpose of the challenged statement in the opinion.

The motion further states: "There is no evidence in the record of any improper relation between the parties even by inference." We disclaim any intimation of any improper relation.

The motion is overruled.

Overruled.