COYZET SHELTON V. D. R. BELNAP ET AL

No. A-4921. Decided July 13, 1955.
Rehearing overruled November 2, 1955.
(282 S. W. 2d Series 682)

38

*Willard C. Williams, Eastham & Williams* all of Houston, *Frank M. Rosson,* of San Antonio, for petitioner.

The Court of Civil Appeals erred in holding that there was no evidence of probative force to support the finding of the jury that M. A. Shelton and petitioner impliedly agreed and consented to be husband and wife. Gorman v. Gorman, 166 S.W. 123; Consolidated Underwriters v. Kelley, Com. App., 15 S.W. 2d 229; Consolidated Underwriters v. Taylor, 197 S.W. 2d 216, refused, n.r.e.

*Morriss, Morriss, Boatwright & Lewis, Carl Wright Johnson,* and *Edward P. Fahey,* all of San Antonio, for respondent.

In reply cited Perales v. Flores, 147 S.W. 2d, 974; Salvini v. Salvini, 2 S.W. 2d 963; Schwingle v. Keifer, 135 S.W. 194.

MR. JUSTICE CALVERT delivered the opinion of the Court.

Petitioner, alleging herself to be the surviving wife of M. A. Shelton, deceased, sued respondents for damages for his wrongful death under Article 4671, Vernon's Annotated Texas Civil Statutes. Respondents, by sworn pleadings, challenged petitioner's right to maintain the suit, contending that she and the deceased were never legally married. Admittedly there was no ceremonial marriage between the parties and issue was joined on the existence of a common law marriage. This issue was severed and tried in limine.

The jury found that (1) "On or about October 1, 1947, M.A. Shelton and Coyzet Shelton mutually, unequivocally, and impliedly agreed and consented, the one with the other, to become, then and from that time thenceforth, husband and wife;" (2) that upon the faith of such agreement they had lived together and cohabited, professedly as husband and wife, and (3) that they had held each other out to the public as man and wife. The trial court rendered judgment non obstante veredicto for respondents and that judgment has been affirmed by the Court of Civil Appeals. 275 S.W. 2d 174.

Following the familiar rule when judgment is rendered non obstante veredicto our statement of the evidence will comprehend only that which supports the jury's verdict.

There can be no question but that the jury's answers to Special Issues Nos. 2 and 3 find strong support in the evidence. But living together and cohabitation of the parties as man and wife and their holding each other out to the public as such satisfies but two of the three essential elements of a common law marriage. This conduct must have been pursuant to an agreement to presently become man and wife. Grigsby v. Reib, 105 Texas 597, 153 S.W. 1124; Schwingle v. Keifer, 105 Texas 609, 153 S.W. 1132; Cuneo v. De Cuneo, Texas Civ. App., 59 S.W. 284.

■ The agreement necessary to the validity of a common law marriage need not be an express agreement; it may be implied. Consolidated Underwriters v. Kelly, Texas Com. App., 15 S.W. 2d 229. This was recognized by the trial court in the wording of Special Issue No. 1. Moreover, an implied agreement ordinarily

may be inferred from the evidence which establishes the second and third essential elements of the marriage—the living and cohabiting together and the holding out to the public. Consolidated Underwriters v. Kelly, supra; Manire v. Burt, Texas Civ. App., 121 S.W. 2d 630, 633, writ refused. But it is said that the inference of an implied agreement may not be drawn in this case because the direct testimony of the petitioner negatives such an agreement as a matter of law.

The record reflects that M. A. Shelton, formerly a resident of Louisiana, had secured a divorce from a former wife in 1946, and that Coyzet, the petitioner, secured a divorce from a former husband on August 18, 1947, and that the two began to sleep together about one week following Coyzet's divorce. Coyzet's testimony is that during this time she and Shelton were engaged and that she was expecting a ceremonial marriage. As a witness she undertook to relate a conversation with Shelton which occurred about October 1, 1947, and it is this testimony which is 'said to negative, conclusively, any implied agreement to presently become man and wife. The parties were discussing marriage and Coyzet asked Shelton when they were going to get married. Her testimony of what then was said is abbreviated as follows:

"* * * And he said, 'Ain't I your husband?' I said 'I don't know' and he said, 'Well, any man that lives with a woman for six months, and she has her divorce and he has his, are common law man and wife.' And I said, 'I don't know.' And he said, 'I don't know what the law is in Louisiana, but that is the law in Texas,' "

"* * * He said, 'From now on what I have is yours and what you have is Mine.' "

\* \* \*

"And he said, 'You don't have anything to worry about because if anything happened to me before I makes out a will, you entitled to my part of the property of anything I have; and if you die before I do, I am entitled to what you have.' "

\* \* \*

"Well, and, too, while we was talking, he said, 'What difference do it make about getting married by a preacher or by a judge when you get just as much right just like you is as you is go get a piece of paper because that ain't doing anything but just paying the State.' "

The theory of the Court of Civil Appeals in holding there was no valid common law marriage between the parties was that the relationship was illicit in origin and that the foregoing testimony negatived an agreement to presently become man and wife. The court said: "From the account given of the October conversation it appears M. A. Shelton believed that under the law of the State of Texas a man and woman, being free of legal impediments, would become man and wife by living together six months. It is likewise clear that the agreement was entered into with this mistaken belief or misapprehension in mind. * * * In any event, it seems certain that the parties did not, by the words employed by them, evince an intention to presently become husband and wife, nor can such intention be implied contrary to the express words used by them."

We believe the related statements of M. A. Shelton are subject to an interpretation supporting the jury's verdict and differing from that given them by the Court of Civil Appeals.

It is to be noted that controlling and conclusive effect is given to the statement of M. A. Shelton that "* * * any man that lives with a woman six months, and she has her divorce and he has his, are common law man and wife. * * * I don't know what the law is in Louisiana, but that is the law in Texas." But there were other contemporaneous statements, i.e.,: "Ain't I your husband?;" "*From now on* what I have is yours and what you have is mine;" "If anything happened to me before I makes out a will, you entitled to my part of the property of anything I have; and if you die before I do, I am entitled to what you have;" "You get just as much right just like you is as you is go get a piece of paper." All of these statements indicate a present intent to then become and thereafter remain husband and wife. Strong evidence that such was the agreement of the parties is that immediately thereafter M. A. insisted on the purchase of a wedding ring for Coyzet and they took a honeymoon trip to Halletsville and Corpus Christi. The agreement that they would then and there become man and wife is not conclusively negatived by M. A.'s misunderstanding of the law. His statement in that respect is reasonably susceptible to the construction that whereas the parties intended to and would agree to presently become man and wife, he did not believe that they would be so recognized in law. The fact that he was mistaken as to how the law would be applied to the facts in interpreting the relationship should not be held to destroy the agreement for a present and continuing relationship of husband and wife.

■ There was no legal impediment to a marriage between the parties on October 1, 1947. The record discloses that both parties were competent to marry. Assuming that the other statements of M. A. Shelton, above quoted, and the subsequent acts and conduct of the parties would support an inference of an implied agreement to become man and wife, the legal effect of M. A.'s statement of the law may be illustrated by recasting his statement in this fashion: "You and I will now take each other as husband and wife and thenceforth will live together as such. Of course, the law in Texas will not recognize our relationship as that of man and wife until we have lived together as such for a period of six months." With the statement in that form, there can be little doubt but that, subsequent cohabitation and holding out being proved, the courts would uphold a jury finding of an agreement, and would declare the marriage valid. In the light of our interpretation of the statements of M. A. Shelton we do not regard Schwingle v. Keifer, Texas Civ. App., 135 S.W. 194, affirmed 105 Texas 609, 153 S.W. 1132, as in point or controlling. The direct testimony of the agreement in that case established, at best, a qualified agreement of marriage—one from which either party was at liberty to withdraw at will.

The testimony of Coyzet is that she and M. A. began an illicit relationship about one week after her divorce, which relationship continued to the time of the conversation. But a relationship begun in illegality may, in the absence of impediments and by the consent and agreement of the parties, put on the cloak of legality. Consolidated Underwriters v. Kelly, Texas Com. App., 15 S.W. 2d 229. This is recognized in Cueno v. De Cuneo, Texas Civ. App., 59 S.W. 284, 286, cited in this case by the Court of Civil Appeals, where it is said: "But the presumption against marriage, when the connection between the parties is shown to have been illicit in origin, may be overcome by proof showing that the original connection has changed its character; and a subsequent marriage may be proved by circumstances. The circumstances, however, must be such as to exclude the inference or presumptions that the former relation continued, and show that it had been changed into that of actual matrimony by mutual consent." The courts should not be loath to approve the efforts of parties to change an illegal to a legal relationship.

Based on our interpretation of the statements of M. A. Shelton, as related by Coyzet, and the subsequent acts and conduct of the parties during the three years they continued to live together as husband and wife, we hold there was evidence of probative force to support the finding of the jury that on or about

October 1, 1947, M. A. Shelton and the petitioner mutually and unequivocally agreed to become, then and from that time thenceforth, husband and wife, which agreement was not conclusively destroyed by M. A. Shelton's statement of his understanding of the law. Accordingly, the judgments of the Court of Civil Appeals and the trial court are reversed, judgment is here rendered for petitioner, on the jury's verdict, declaring her to be the surviving wife of M. A. Shelton, and the trial court is directed to proceed with the trial of the other issues in the case.

Opinion delivered June 29, 1955.

### ON REHEARING

Mr. Justice Calvert delivered the opinion of the Court.

In their motion for rehearing respondents call attention to three cross-points of error contained in their brief in the Court of Civil Appeals which were not considered by this Court on original submission, and which, if sustained, would require a remand of this cause for retrial rather than a rendition of judgment in petitioner's favor. We have concluded, however, that none of the points should be sustained.

■ In the first cross-point it is contended that the trial court erred in not granting a mistrial when, during cross-examination of one Idell Guidry, a witness for respondents, it was brought out that she was a voluntary witness at the trial, that she was "notified" to come, and that she did not know the respondents or their attorneys before leaving her home in Houston to attend the trial in San Antonio and was not "notified" by them. Respondents contend that this type of cross-examination inevitably left the impression with the jury that an insurance company was involved in the case. As observed in our original opinion the only issue tried was that of marriage. It is stated by petitioner, and unchallenged by respondents, that those portions of the pleadings dealing with liability and damages, by agreement of the parties, were not read to the jury. We do not regard the point as well taken.

■ In their second cross-point respondents contend that the trial court erred in admitting testimony of the witness Ben Kaplan to the effect that Coyzet and M. A. had a general reputation in the community as being a married couple. It is admitted that marriage may be proved by general reputation. McCormick and Ray on Evidence, § 590, p. 749; Wigmore on Evi-

dence, 3rd Ed., § 1602. The objection to the testimony was that no proper predicate therefor was laid. The testimony of the witness showed that Coyzet had worked for him for some fifteen months during which time she and M. A. were living together in the witness' servant house. He had full opportunity to observe both of the parties in their daily lives and in their contact with his neighbors. He testified that he knew the general reputation of the parties in the community. The fact that he could not relate occasions when he had heard his neighbors discuss the marital status of Coyzet and M. A. went to the weight and not to the admissibility of his testimony. Where a man and woman are openly living together in the same house an absence of discussion of their marital status would, in itself, indicate an acceptance of them in the community as husband and wife. Wigmore says that the rule recognizing general reputation as evidence of marriage is "analogous to the rule laid down for reputation as to moral character" (§ 1603), and, as to the latter rule, that "the absence of utterances unfavorable to a person is a sufficient basis for predicating that the general opinion of him is favorable" (§ 1614). See also Gilson v. State, 140 Texas Crim. Rep. 345, 145 S.W. (2d) 182.

■ By their third cross-point respondents complain of the action of the trial court in admitting testimony of the witness Mrs. Gertrude Gerson. Coyzet had accompanied Mr. and Mrs. Gerson to Arizona in 1947 and worked for them there for a time but later returned to Houston, Texas. Thereafter Mr. and Mrs. Gerson returned to Houston to live and Coyzet worked for them for a period of some six months in 1949 during which time M. A., on several occasions, visited the Gerson home to get Coyzet and usually waited for her in the kitchen. The particular testimony of Mrs. Gerson to which respondents objected was as follows: " * * * the entire time she (Coyzet) worked for us after she got back, they (Coyzet and M. A.) were man and wife so far as we knew. I mean they were living together and they were certainly working hard toward a goal together, and just as respectable as any married couple that you could hope to see." The objection to the testimony was that it contained several opinions and conclusions of the witness. A reversal will not be ordered because of the erroneous admission of evidence unless it appears from a consideration of the record as a whole that its admission was reasonably calculated to cause and probably did cause the rendition of an improper verdict. Rules 434 and 503, Texas Rules of Civil Procedure; Dallas Ry. & Term. Co. v. Bailey, 151 Texas 359, 250 S.W. 2d 379; Traders & General

Ins. Co. v. Gray, Texas Civ. App., 257 S.W. 2d 327, no writ history.

■ There was testimony before the jury that while Mr. and Mrs. Gerson were still in Arizona they received a Christmas card signed "Coyzet and M. A. Shelton;" that after the return of the Gersons to Texas, Coyzet introduced M. A. to Mr. and Mrs. Gerson as her husband; that during the six-months' period Coyzet was working for them both. Mr. and Mrs. Gerson had frequent occasion to be in the house where Coyzet and M. A. lived and found them occupying a room together; that the attitude of Coyzet and M. A. toward each other was always kind and considerate; that through their separate and community funds and joint efforts Coyzet and M. A. bought, moved and partially rebuilt two houses on lots owned by them. Assuming that the testimony of Mrs. Gerson, above quoted, was in the nature of an opinion and conclusion it added little or nothing to the testimony properly in evidence and we cannot say, therefore, that it was reasonably calculated to cause and probably did cause an improper verdict and judgment.

The motion for rehearing is overruled.

Opinion delivered October 5, 1955.

Rehearing overruled November 2, 1955.