Ellender Ann HOWARD, b/n/f Mrs. Callie Howard, Appellant,

v.

Mrs. Tressie P. HOWARD, Appellee.

No. 15666.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Nov. 5, 1970.

Helm, Jones & Pletcher, Michael A. Moriarty, Houston, for appellant.

Brock & Williams, Norman Whitlow, Houston, for appellee.

COLEMAN, Justice.

This is a suit to determine the proper ownership of $6,000.00 of the death benefits due under a Workmen's Compensation Insurance claim. The outcome of the suit depends on the existence vel non of an alleged common law marriage between appellee, Tressie P. Howard, and the deceased, A. D. Howard.

The suit arose as a dispute among alleged beneficiaries of A. D. Howard. A. D. Howard had been killed in an industrial accident while working for Brown & Root, Inc. Highlands Insurance Company, the Workmen's Compensation death benefit carrier, deposited $12,000.00 into the registry of the court and was fully discharged from further liability on the claim. Appellant, Mrs. Callie Howard, abandoned her claim individually, and other claimants, including siblings of the deceased, and the Second Injury Fund of the State of Texas were removed from the case.

It was stipulated by the remaining parties that Ellender Ann Howard was a minor dependent child of the deceased under the doctrine of adoption by estoppel, and was entitled to one-half of the $12,000.00, as a statutory beneficiary of the deceased. The case then proceeded to trial to determine the proper ownership of the other $6,000.00. The trial court aligned the parties to make appellee, Tressie Howard, the plaintiff.

At the close of plaintiff's evidence, defendant made a motion for an instructed verdict, which the trial court overruled. The jury returned a verdict in response to three special issues finding from a preponderance of the evidence that (1) Tressie and A. D. Howard, after February 11, 1964 mutually and unqualifiedly agreed to become then and from that time husband and wife; (2) that pursuant to such agreement they lived together as husband and wife after February 11, 1964; and (3) they held themselves out as husband and wife after February 11, 1964. A timely motion for judgment non obstante veredicto by defendant was overruled and the court entered judgment for plaintiff.

Appellant's seven points of error · all basically challenge the jury's answer to the first special issue inquiring about a mutual, present, unqualified agreement to be husband and wife. Appellant complains that there is no evidence and insufficient evidence to establish a common law marriage.

Appellee was the only witness to testify at the trial. From her testimony it is evident that she and A. D. Howard started to live together sometime in 1959. At the time, A. D. Howard was legally married

to appellant, Callie Howard. Appellee continuously cohabited with A. D. Howard until his death on February 24, 1964. Appellee knew about A. D. Howard's previous marriage to Callie Howard, but he told her they were separated. A. D. Howard received a final divorce from Callie Howard on February 11, 1964. On that date he told appellee that he had his divorce and had the papers: "we was going to get married."

Tressie Howard testified that on February 12, 1964, she considered herself to be A. D.'s wife. On February 15, 1964, A. D. and Tressie together put a "women's wedring set" in lay-away at Levit's Jewelers. They were planning a ceremonial wedding at Easter of 1964. Tressie testified about the planned ceremonial wedding: "We was going to do it the right way after he got his divorce, he wanted to do it right." She testified that they planned a ceremonial marriage, even though she already considered herself married to A. D., because "we were going to do it the right way." Her testimony could be construed to be that they both felt that their action in living together under an agreement to be married was wrong and that they planned to "do right" by having a ceremonial marriage. She further testified that it was her understanding that they were going to continue their relationship "the same way things had been going."

Appellee further testified that she and A. D. would go out together and would "socialize" with other people, and that she was known as Tressie Howard to these other people. She testified that she and A. D. had a charge account at a furniture store in the name of Howard, and that she still used the account under the name of Howard. Tressie further testified that she cooked, washed and ironed for A. D.; that he came home to her every evening and she fixed dinner and breakfast for him, and that they slept together in the same room in the same bed, and that they had had sexual intercourse on the Saturday

night before he was killed on Monday. She considers him as her deceased husband.

One other piece of evidence was introduced to support Tressie's claim, and that was a page from the 1964 Houston city directory which showed "(Trissie P.)" as the wife of A. D. Howard. This appears to be all the evidence which would tend to support Tressie's claim.

On the other side, Tressie testified that her social security card carried the name Tressie Pete, her maiden name; that she filed separate income tax forms from 1959 to 1964 under the name Tressie Pete; that she is presently using the name Tressie Pete; that she is known as Tressie Pete to the people from whom she is presently renting her house, and that at the place she lived before her present home and after A. D. died she was known as Tressie Pete.

Appellee further admitted signing A. D. Howard's death certificate as Tressie Pete, and that the utility bills for the house where she lived with A. D. were in the name of Tressie Pete. Tressie testified that she considered herself married to A. D. Howard on February 12, 1964 because " * * * we had been together as man and wife."

The three elements necessary to have a common law marriage are: (1) an agreement presently to be husband and wife; (2) living together as husband and wife; and (3) holding each other out to the public as such. Humphreys v. Humphreys, 364 S.W.2d 177 (Tex.Sup.1963); Ex Parte Threet, 160 Tex. 482, 333 S.W.2d 361 (1960); Shelton v. Belknap, 155 Tex. 37, 282 S.W.2d 682 (1955). All three elements are necessary, but there need not be an express agreement to presently be husband and wife. Humphreys v. Humphreys, supra; Associated Indemnity Corp. v. Billberg, 172 S.W.2d 157 (Tex.Civ.App.— Amarillo 1943, no writ). Further, the existence of the agreement may be implied or inferred from evidence which establishes the other elements, cohabitation and hold-

ing out. Humphreys v. Humphreys, supra; Consolidated Underwriters v. Kelly, 15 S. W.2d 299 (Tex.Com.App.1929, judgment adopted).

There is an exception to the general rules about establishing a common law marriage. If an impediment to the creation of a lawful marriage between the parties exists, as when one is married to another, or where one is under any other lawful disability, there can be no common law marriage even if all the three elements are proved. Esparza v. Esparza, 382 S.W.2d 162 (Tex.Civ.App.—Corpus Christi 1964, no writ). Further, there can be no presumption of marriage when the relationship between the parties was illicit at its inception. Drummond v. Benson, 133 S.W. 2d 154 (Tex.Civ.App.—San Antonio 1939, writ ref'd); Walter v. Walter, 433 S.W. 2d 183 (Tex.Civ.App.—Houston [1st Dist.] 1968, writ ref'd, n. r. e.)

Where the original relationship between the parties was illicit in origin, but where there has been a change in circumstances, a subsequent common law marriage may be shown circumstantially. However, the facts must be such as to exclude the inference that the previous illicit arrangement continued, and must show a new matrimonial intent. Cuneo v. DeCuneo, 24 Tex.Civ.App. 436, 59 S.W. 284 (Tex.Civ. App.1900, no writ), quoted in Shelton v. Belknap, supra; Brown v. Brown, 115 S.W. 2d 786 (Tex.Civ.App.—Galveston 1938, no writ).

The evidence in the case is largely undisputed. Only Tressie testified, and admissions she made on cross-examination were undisputed. It is a matter of interpreting the meaning of her testimony. In this regard, the Supreme Court has indicated a preference for liberality in favor of finding a common law marriage. "The courts should not be loath to approve the efforts of parties to change an illegal to a legal relationship." Shelton v. Belknap, supra, 282 S.W.2d at 686.

The evidence which tends to show the existence of the three elements of a common law marriage after February 11, 1964 is not extensive. There was cohabitation, and a holding out to be husband and wife. These two elements do not appear to be disputed, and appellant brings no points of error challenging the jury's findings on these two points. Tressie and A. D. purchased a wedding set probably for their planned ceremonial wedding at Easter. The strongest evidence of a common law marriage is Tressie's direct and explicit testimony that she considered herself to be the wife of A. D. Howard.

Prior to the date on which A. D. Howard secured his divorce, both A. D. and Tressie recognized that, while they were living together as husband and wife, they were not married. Mrs. Callie Howard, the legal wife of A. D. Howard, lived in the same general area. Ellender Ann Howard, the daughter of A. D. and Mrs. Callie Howard, visited in Tressie's home. There is evidence that Mrs. Callie Howard asked Tressie to keep the child for several weeks. The jury could have concluded that a friendly relationship existed between these parties, and that A. D. secured a divorce some five years after he first began living with Tressie for the purpose of marrying her.

The testimony clearly establishes an intention on the part of A. D. and of Tressie to change the nature of their relationship from an illicit one to that of lawful marriage. An inference could be drawn from the evidence that this intention existed prior to the date of the divorce and continuously thereafter to the date of A. D.'s death. They continued to cohabit and to hold themselves out to the public as husband and wife. The evidence is clearly sufficient to support the jury's findings unless the evidence concerning the planned ceremonial marriage establishes the fact that there was no present agreement to be married. Consolidated Underwriters v. Kelly, 15 S.W.2d 229 (Tex.Com.App., Sect. B, 1929).

There is nothing necessarily inconsistent between an implied agreement to enter into a common law marriage immediately and an intention to have a ceremonial marriage at a definite future date. McIlveen v. McIlveen, 332 S.W.2d 113 (Tex.Civ.App. —Houston 1st Dist. 1960).

The agreement to presently become husband and wife may be implied from evidence of cohabitation as husband and wife after the impediment to marriage is removed. Consolidated Underwriters v. Kelly, supra. Considered in the light most favorable to the jury verdict, Tressie's testimony that at the time she and A. D. were planning their ceremonial marriage they agreed that they would continue living together as they had in the past, could be interpreted as meaning only that they would continue sharing the same bedroom, using the same name, etc. In other words, while they agreed that there would be no change in their manner of living, a new element was included in this agreement to live together, an intent to be married, which was absent from their previous agreement. The evidence is sufficient to support the verdict of the jury.

The judgment is affirmed.