**Joe TATUM, Appellant,**

v.

**Betty Lou TATUM, Appellee.**

No. 17271.

Court of Civil Appeals of Texas, Fort Worth.

Jan. 21, 1972.

Rehearing Denied April 14, 1972.

Pringle, Wells & Finney, Brantley Pringle, and Faythe Ann Blake, Fort Worth, for appellant.

J. Roy Hudspeth, Fort Worth, for appellee.

## OPINION

LANGDON, Justice.

The appellee, Betty Lou Tatum as plaintiff, alleging the essential elements of a common law marriage, initiated a suit for divorce against the appellant, Joe Tatum, as the defendant husband.

The appellee obtained jury findings on all of the elements of a common law marriage and the elements necessary for a divorce. The judgment based upon the verdict of the jury which was rendered by the court is the subject of this appeal.

We affirm.

Some of the pertinent facts involved in this case are summarized in the paragraphs next following.

The parties to this action began living together on August 11, 1961. At this time Betty Lou was still married to one Kenneth Miller from whom she was divorced on August 14, 1963. According to appellee's testimony it was during the summer of 1963, after her divorce from Miller, that she and Joe Tatum began living with each other as husband and wife and that they continued to do so from that time until May of 1968. They both intended to be married from the time of her divorce from Miller.

Thereafter she helped Joe build the Fort Worth Elevator Company. She went to work and gave Joe Tatum the money to help buy a farm. They moved on to the farm in February of 1964, and generally began the undertaking of stocking and rebuilding the farm. They opened a joint checking account. They filed joint tax returns. The parties had joint checking accounts and opened joint bank accounts. Joe Tatum acquired a policy of life insurance on his life payable to Betty Lou Tatum as his wife. Joe Tatum referred to her, under oath, as his wife in a deposition taken while the case was pending in Johnson County. He paid ad valorem taxes on his farm in the name of Mrs. Dana M. Tatum. He signed the Property Settlement Agreement as her husband. He admitted her to St. Joseph's Hospital in Fort Worth as his wife. He obtained a $100,000.00 life insurance policy payable jointly to his daughter and his wife. Joe Tatum admitted that Betty Lou put her separate earnings, while they were married, into the purchase of the farm.

It was generally known throughout the community and among their social friends that they were married. A social friend of theirs, Carol Olds, testified that Joe and Betty Lou held themselves out as being married. She knew them as man and wife. Joe and Betty were generally referred to as man and wife.

Based upon our review of the entire record in this cause we are of the opinion that the above summary, together with other testimony contained in the record and the various exhibits, conclusively show that, by the overwhelming weight and preponderance of direct evidence, the plaintiff es-

tablished the three essential elements of a common law marriage.

It is undisputed that most of the transactions here involved occurred prior to the adoption of the new Family Code, Secs. 1.91 and 1.92, Vernon's Ann.Civ.St. Prior to adoption of the Family Code the Supreme Court of Texas in Humphreys v. Humphreys, 364 S.W.2d 177, 178 (Tex. Sup., 1963) said:

"The elements of a common law marriage are: (1) an agreement presently to be husband and wife; (2) living together as husband and wife; and (3) holding each other out to the public as such. Ex parte Threet, 160 Tex. 482, 333 S.W.2d 361, and authorities there cited. It is not essential that an express agreement be shown by direct evidence. A contract to marry may be implied or inferred from evidence which establishes the second and third elements of the marriage. Shelton v. Belknap, 155 Tex. 37, 282 S.W.2d 682."

The issues submitted by the trial court in this cause were based upon the same three elements of a common law marriage as those described by the Supreme Court in the Humphreys case, supra. At the time of the argument and in his brief the appellant's chief complaint is directed against the third element, i. e., "holding each other out to the public as such." This is untenable. There was ample evidence to support the finding of the jury as to this and all other elements of a common law marriage. Appellant's fifth point is overruled.

A common law marriage is a legal and valid marriage. It can only be terminated by death, divorce or annulment. Because of this, the validity of the common law marriage which was consummated by the parties to this suit in the summer of 1963, could not be vitiated by subsequent acts of the parties in 1968 after some five years of marriage to one another. Evidence of these subsequent acts complained of by the appellant did not persuade the jury to side with him. It was not error for

the court to refuse to submit issues or to give instructions based upon such subsequent conduct. The appellant's points one through four and point six, relating to the court's refusal to submit various instructions and issues, are overruled.

By his seventh point of error the appellant contends that the court erred in excluding portions of testimony of the appellee on a preliminary hearing which was offered by him. The point is overruled for the reasons that there is no reference to or basis to support the point in the appellant's amended motion for new trial. It is not the subject of any bill of exceptions appearing in the record. Third, most, if not all, of the excluded testimony was brought out during the trial and placed before the jury.

Appellant's eighth point of error, complaining of the court's charge as being unsupported by the pleadings, is overruled because it is not founded on any complaint contained in the appellant's amended motion for new trial. That portion of point eight, relating to the court's reference to August 14, 1963, the date of the appellee's divorce from Miller, was undisputed in the evidence.

Appellant's ninth point complains of the action of the court in admitting into evidence a judgment of annulment over the appellant's objection that he was not a party to it. The appellant, by his pleadings and otherwise, was taking the position that the appellee and one Mervin Hutchens were, at the time of trial, married. In our opinion it was not error for the appellant to offer proof in rebuttal and for the court to admit it. If such was error it was harmless under the facts of this case. Rule 434, Texas Rules of Civil Procedure.

All points of error are overruled and the judgment of the trial court is affirmed.

OPINION
ON MOTION FOR REHEARING

After our original opinion was handed down in this case the parties involved filed

a stipulation, agreed to by each, to the effect that the original transcript heretofore filed in this cause was incomplete in that the second page of the defendant's amended motion for new trial was omitted through an oversight of the District Clerk and not included in the transcript. Pursuant to such agreed stipulation a supplemental transcript was filed with the clerk of this Court which contains the entire text of the defendant's amended motion for new trial.

The filing of the appellant's complete amended motion for new trial, including the omitted second page, was prompted by the action of this Court in overruling appellant's points 7 and 8 because such points were not founded on any complaint contained in the incomplete amended motion for new trial which was originally filed with this Court.

■ With reference to point 7 it is again pointed out that the claimed error, if any, of the Court in excluding portions of the testimony of the appellee which was given by her in a preliminary hearing was cured for the reason that most, if not all, of the excluded testimony complained of and pertinent to the matters here involved was brought out during the trial and was before the jury. The error, if any, complained of in point 7 was harmless. Rule 434, T.R.C.P., and authorities there cited.

Appellant's point 8 complains of the court's charge as being unsupported by the pleadings. The pleadings alleged that the parties were married on or about August 11, 1961, and permanently separated during the month of May, 1968. By way of answer and cross-action, the defendant (appellant) denies that he is now or has ever been married to plaintiff (appellee) in any religious, civil or common-law marriage. Appellant asserts by his pleadings that the appellee is falsely and fraudulently asserting that she is his wife and as such, the owner of a community interest in his property; that he is not now and never has been married to the appellee who is asserting a pretended marriage relationship with him for the purpose of creating a cloud upon the title to his property.

■ The main thrust of the appellant's point as to lack of pleadings is the date of the alleged marriage to him. There can be no doubt that the marriage was alleged. As was stated in the original opinion the parties to this suit commenced to live together on August 11, 1961, at which time the appellee was married to Kenneth Miller. The judgment in her divorce from Miller recites that the divorce action came on to be heard on July 11, 1963. The judgment was signed on August 14, 1963. The appellee's marriage to Miller was a valid one which could be terminated only by death of one of the parties to it, annulment of the marriage or by divorce. A common-law marriage could not come into being between the parties to this suit until one of the above events occurred. When her divorce from Miller occurred the appellee was free to marry appellant.

According to the testimony in this case the parties to this cause began living together under an agreement presently to be husband and wife during the summer of 1963 following her divorce from Miller and continued to live together as husband and wife until May of 1968, a period of about five years during which time they held each other out to the public as being husband and wife.

The intention of the parties present at the time this relationship commenced following the divorce from Miller and their conduct thereafter constituted a valid common-law marriage.

■ Since the appellee was not divorced from Miller until July 11, 1963, or August 14, 1963, under the record in this case, the parties could not enter into a valid common-law marriage until the judgment of divorce from Miller was rendered. Since this was so as a matter of law it was not error for the court to use the date it did in the issue complained of. Under the facts it was not a comment on the weight of the evidence and since the allegation of marriage was

contained in the pleadings it was not necessary to amend them to support the issue given by the court.

We would emphasize here that once the marriage between the parties to this suit was consummated in the summer of 1963 the action or conduct of one of the parties some five years later should not alter the legal status of their marriage. It was their manifested intention in the summer of 1963 which controlled the status of their relationship as husband and wife.

The motion for rehearing is denied.