Taylor **MALONE**, Appellant,

v.

Edwin **TREADVILLE**, Appellee.

No. 15989.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Nov. 2, 1972.

M. W. Plummer, Houston, for appellant.

Cauley & Kershner, Wm. J. Kershner, Robert S. Pieratt, Houston, for appellee.

PEDEN, Justice.

The matter in dispute on this appeal is the sufficiency of the evidence to support jury findings of the elements of a common law marriage. This is a suit to remove a cloud on the title to a certain improved lot in Houston. Edwin Treadville alleged that he had inherited title to the lot from his father, Lum Treadville, by the laws of descent and distribution.

Defendant-appellant complains of the sufficiency of the evidence to support jury findings of the elements of a common law marriage, subsequent to Edwin's birth, be-

tween Lum Treadville and Edwin's mother, Amelia. It is not disputed that they never did enter into a ceremonial marriage, but neither is it disputed that Lum Treadville always recognized Edwin Treadville as his son. Article 2472, Vernon's Texas Civil Statutes, then in effect, provided: "Where a man, having by a woman a child or children, shall afterward intermarry with such woman, such child or children, if recognized by him, shall thereby be legitimated and made capable of inheriting his estate . . . ."

Lum Treadville did not reach the age of 16 until October 6, 1899, so any purported marriage with Amelia prior to that date was prohibited by Article 4603 (formerly Art. 2955) Vernon's Texas Civil Statutes. It provided: "Males under sixteen and females under fourteen years of age shall not marry." The special issues with which we are concerned inquired as follows:

"SPECIAL ISSUE NO. 1: Do you find from a preponderance of the evidence that Lum Treadville and the mother of Plaintiff, Amelia Loomis Williams Treadville, subsequent to October 6, 1899, mutually and unqualifiedly agreed and consented, the one with the other, to become then and from that time thenceforth, husband and wife?

"SPECIAL ISSUE NO. 2: If you have answered Special Issue No. 1 'We do', and only in that event, then answer Special Issue No. 2: Do you find from a preponderance of the evidence that the said Lum Treadville and Plaintiff's mother pursuant to such agreement (provided you have found such agreement was made), lived together and cohabited as husband and wife, the term cohabited meaning 'living together, claiming to be married, in the relationship of husband and wife and doing those things ordinarily done by husband and wife.'

"SPECIAL ISSUE NO. 3: If you have answered Special Issue No. 2 'We do', and only in that event, then answer Special Issue No. 3: Do you find from

a preponderance of the evidence that the said Lum Treadville and Plaintiff's mother, during the time they lived together and cohabited as husband and wife (provided you have so found), held each other out to the public as husband and wife?"

To each of these special issues the jury gave an answer of "We do."

■ The appellant's first point of error is that the trial court erred in overruling his motion for a directed verdict since the evidence established that the plaintiff was not born of a valid marriage under Article 4603, Vernon's Texas Statutes (1925).

We overrule this point. In framing the special issues the trial court did not inquire into events that occurred before Lum Treadville reached age 16 on October 6, 1899; thereafter, the provisions of Article 4603 did not prohibit him from entering into a valid marriage.

The appellant's second point of error asserts that the jury's affirmative answer to the first special issue should be set aside because there was no evidence or insufficient evidence that the parties ever mutually agreed and consented to become husband and wife.

His third point of error is that the affirmative answer to Special Issue No. 2 should be set aside because the evidence established that the relationship between Lum Treadville and Amelia Williams was meretricious at its inception and failed to show that they subsequently lived together and cohabited as husband and wife.

Appellant's fourth and last point of error is that the jury's affirmative finding in response to Special Issue No. 3 should be set aside because there is no evidence or insufficient evidence to support it.

In deciding the no evidence points, we consider only the evidence supporting the jury findings. In deciding whether the evidence was sufficient to support the find-

ings to the first and third issues, we examine all of the evidence.

All of the exhibits to which we will later refer were introduced in evidence without objection.

Plaintiff Edwin Treadville testified that he was born on August 26, 1899. When he was small he lived with his father, Lum Treadville, and his mother, Amelia Williams, at 211 Saulnier in Houston. That his mother and father slept together there. Edwin said his mother had another son named Howard Williams, who was about 11 years older than he. He said his mother told him that Howard's father was dead. The plaintiff remembered that Lum Treadville referred to him and his mother as his son and his wife when he introduced them to Leon Wilson on one occasion and to Joseph Logan on another. He later testified that Leon Wilson was about 11 years older than he. He can't remember exactly when this introduction occurred, but it was while his parents were living together. They used to all go to church together, but his mother and father separated when he was about six years old. From the time he was old enough to remember, Lum Treadville was under the same roof with him and he was informed by his mother that Lum was his daddy and he started calling him "daddy." When he came to know his father he was just big enough to walk, about two years old. The neighbors called his mother Mrs. Treadville when the plaintiff was young. An objection to this answer was sustained, but the answer was not stricken.

Plaintiff testified he did not know Lola Lott personally, but he knew her when he saw her. He doesn't know anything about a marriage certificate concerning his father and Lola Lott, and he doesn't know of their having lived together. He doesn't know whether Lum and Amelia ever got a divorce. When they split up it was over Lola. His mother died in December, 1909, when he was about ten. His father and his mother's great aunt made the funeral arrangements, then his father took him to live at the house of his father's mother. He knows that his father later married Mary Clay. His father died in 1948.

Expressing reluctance to discuss the matter, the plaintiff characterized Lum Treadville as "just a lover boy" and said "he just liked to chase, that is all."

Plaintiff's exhibit number 1 is a delayed birth certificate obtained by the plaintiff, Edwin Treadville, in August of 1965. In his application for it, he listed his father as Lum Treadville and his mother's maiden name as Amelia Lummus. One of the supporting documents was a 1900 Census record showing that as of June 1, 1900 Edwin Williams, age 9 months, was the son of Amelia Williams, that she was the head of the family, and that they lived at 211 Saulnier in Houston. No mention was made of Lum Treadville in the report. The plaintiff's explanation as to the absence of Lum Treadville's name on the certificate, was that as far as he knew, he (the plaintiff) was about two years old when he first came to know his father.

The birth certificate application recited that a supporting document from Concord Baptist Church showed that as of January 2, 1953 his mother's name was listed as Amelia L. Williams and his father as Lum Treadville.

Plaintiff's exhibit 8 is a certified copy, from the Harris County Clerk's office, of a marriage license bearing an "Officer's Return" reciting that Lum Treadville and Lola Lott were married in Houston by Rev. A. G. Austin on December 24, 1904.

On cross-examination the plaintiff testified that his parents had separated about a year or so before he started to school in September of 1906 and that he was seven years old in August of 1906. That his mother died in 1909, probably on December 13. She was older than Lum, but not much older, and he estimates that she was about 36 or 37 when she died. He doesn't have a copy of her death certificate.

His deposition testimony, which was offered by the defendant "for impeachment," was that his parents' marriage wasn't terminated by death or divorce, so far as he knows, they just quit some time within two years before September of 1907.

■ The elements of a common law marriage are: 1) an agreement presently to be husband and wife; (2) living together as husband and wife; (3) holding each other out to the public as such. Ex parte Threet, 160 Tex. 482, 333 S.W.2d 361 (1960) and authorities there cited. It is not essential that an express agreement be shown by direct evidence. A contract to marry may be implied or inferred from evidence which establishes the second and third elements of the marriage. Shelton v. Belknap, 155 Tex. 37, 282 S.W.2d 682 (1955); Humphreys v. Humphreys, 364 S.W.2d 177 (Tex.1963).

■ Our Supreme Court stated in Shelton v. Belknap, supra, that a relationship begun in illegality may, in the absence of impediments and by the consent and agreement of the parties, put on the cloak of legality. A subsequent marriage may be proved by circumstances, but they must be such as to exclude the inference that the former relation continued, and show that it had been changed into that of actual matrimony by mutual consent. "The courts should not be loath to approve the efforts of parties to change an illegal to a legal relationship."

We have noticed that it was the appellee, Edwin Treadville, who introduced in evidence the marriage license and certificate showing that Lum Treadville married Lola Lott on December 24, 1904. Also, that he introduced the 1900 U. S. Census record showing that his mother was listed as of June 1, 1900 as Amelia Williams, 211 Saulnier, Houston, head of the family, and that the appellee was listed as Edwin Williams.

In Hodge v. Hicks, 149 Tex. 390, 233 S. W.2d 557 (1950), it was held that even though there had been evidence that a man and a woman had lived together as husband and wife, that each acknowledged being married to the other, it being understood in the community that they were husband and wife, and the man having acknowledged a child born of the relationship to be his, still a trial court could reasonably conclude that there was no agreement between them to become husband and wife when the evidence showed that while the woman was still living, the man contracted a ceremonial marriage with another woman, there having been no evidence of a divorce between the man and the first woman; in other words, a fact issue was raised.

The only witness who testified as to any of the events or as to the relationship in question was the plaintiff-appellee.

There is little evidence as to the attitude of the plaintiff's mother toward her relationship with Lum Treadville, other than that they lived together for a few years. She is said by the plaintiff to have told him that Lum was his daddy, but aside from the testimony that the neighbors called her Mrs. Treadville, there is no indication that she ever told anyone that Lum was her husband. The record is silent as to what her reaction, if any, was to the two incidents related by the plaintiff when Lum Treadville introduced her as his wife to a barber and to a boy.

■ We overrule the appellant's second, third and fourth points of error.

Affirmed.