Cloverdell REILLY, Appellant,

v.

Pauline L. JACOBS, Administratrix of
the Estate of James Palmer Jacobs,
Deceased, Appellee.

No. 18865.

Court of Civil Appeals of Texas,
Dallas.

April 8, 1976.

Rehearing Denied May 6, 1976.

Paul E. Lokey, Dallas, for appellant.

Jack Johannes, Dallas, for appellee.

CLAUDE WILLIAMS, Chief Justice.

The sole question presented by this appeal is whether the record supports the finding of the judge of the probate court that James Palmer Jacobs and Pauline L. Jacobs had consummated a valid informal, or common-law marriage, which continued until the death of James Palmer Jacobs. We hold that the record supports such a finding and, therefore, affirm the judgment.

On December 11, 1974, James Palmer Jacobs died intestate. Pauline L. Jacobs, claiming to be the surviving wife of the deceased was duly appointed administratrix of the estate of James Palmer Jacobs, Deceased. Thereafter, Cloverdell Reilly, sister of the deceased, filed her petition to declare heirship in which she asserted that the only heirs at law of James Palmer Jacobs, deceased, and, therefore, the only persons en-

titled to participate in his estate, were his mother, two sisters, two half-brothers and a niece and nephew. She asked the probate court to determine the question of heirship and division of the estate of the deceased among such heirs. Pauline L. Jacobs, both individually and as administratrix of the estate of James Palmer Jacobs, deceased, filed her response to such petition in which she alleged that she and James Palmer Jacobs were married "by common law" in 1968 and at that time agreed to be and become husband and wife and that at all times thereafter until the death of Jacobs, they lived and cohabited together as husband and wife and held each other out to the public as such. She alleged that no children were ever born to or adopted by James Palmer Jacobs. She prayed that she be declared to be the sole heir of her deceased husband and entitled to inherit the whole of his estate. Following a hearing before the probate judge, without a jury, judgment was rendered decreeing that there was a valid common-law marriage between James Palmer Jacobs and Pauline L. Jacobs which entitled her to receive all of the property of the deceased. The court further found the final accounting of the property of the deceased to be correct. Cloverdell Reilly appeals only from that part of the judgment upholding the validity of the common-law marriage. In a number of points of error she assails the findings and conclusions of the probate judge which upholds the common-law marriage status between the parties.

■ Texas has long recognized the validity of a common-law or informal marriage. Our courts, and the legislature, have said that the existence of the relationship or status is valid if three elements exist. These elements are: (1) An agreement, express or implied, presently to be husband and wife;[1] (2) living together in cohabitation as man and wife; and (3) the parties holding each other out to the public as husband and wife. *Humphreys v. Humphreys*, 364 S.W.2d 177 (Tex.1963); *Ex parte Threet*, 160 Tex. 482, 333 S.W.2d 361, 364 (1960); *Shelton v. Belknap*, 155 Tex. 37, 282 S.W.2d 682 (1955); *Grigsby v. Reib*, 105 Tex. 597, 153 S.W. 1124 (1913); Tex. Family Code Ann. § 1.91(a)(2) (Vernon 1975).

Appellant, in her brief, has conceded that the last two elements of a common-law marriage were established by competent evidence at the trial. This narrows the question to be decided by this court to whether the record supports the probate court's finding that there was an agreement between the decedent and appellee to be presently married.

■ The difficulty in producing direct evidence relating to such an agreement between a man and a woman to be presently married is quite apparent since the lips of one of the two parties are sealed by death and the lips of the other party who survives are closed by the mandatory prohibition of Tex.Rev.Civ.Stat.Ann. art. 3716 (Vernon 1926), commonly known as the "Dead Man Statute." For this reason, the courts have long held that such an agreement need not

1. The Supreme Court of Texas in *Grigsby v. Reib*, 105 Tex. 597, 608, 153 S.W. 1124, 1130 (1913), speaking through Chief Justice Brown, after an exhaustive historical and legal review of the common-law marriage relationship, said:

Marriage is not a contract, but a status created by mutual consent of one man and one woman. The method by which it is solemnized or entered into may be by proceedings prescribed by statute, or by mutual agreement with cohabitation, but, however contracted, having the same elements, and producing the status of husband and wife. The sole difference which can legally exist is in the method of expressing consent; and the only particular in which a marriage as at common law can differ from the statutory method is the absence of license and the ceremony. The cohabitation must be professedly as husband and wife, and public, so that, by their conduct towards each other, they may be known as husband and wife. Such marriages may be equally the consummation of a mutual affection, which will produce a home and family that will contribute to good society, to free a, d just government, and to the support of christianity—to the common weal. It would be sacrilegious to apply the designation, 'a civil contract' to such a marriage. It is that and more; a status ordained by God, the foundation and support of good government, and absolutely necessary to the purity and preservation of good society.

be expressed but may be implied and ordinarily may be inferred when evidence establishes the second and third essential elements of the marriage relationship. *Humphreys v. Humphreys*, 364 S.W.2d 177 (Tex. 1963); *Shelton v. Belknap*, 155 Tex. 37, 282 S.W.2d 682 (1955); *Gary v. Gary*, 490 S.W.2d 929 (Tex.Civ.App.—Tyler 1973, writ ref'd n.r.e.); *Rosales v. Rosales*, 377 S.W.2d 661 (Tex.Civ.App.—Corpus Christi 1964, no writ); and *McIlveen v. McIlveen*, 332 S.W.2d 113 (Tex.Civ.App.—Houston 1960, no writ).

The legislature adopted this rule when it enacted Tex. Family Code Ann. § 1.91(b) (Vernon 1975) which states: "In any proceeding in which a marriage is to be proved under Subsection (a)(2) of this section, the agreement of the parties to marry may be inferred if it is proved that they lived together as husband and wife and represented to others that they were married."

■ Appellant concedes that the evidence, which we need not discuss in detail, demonstrates conclusively that Pauline L. Jacobs and James Palmer Jacobs lived together as husband and wife and held themselves out to the world to be husband and wife. Therefore, under these authorities, and the statute quoted, the trial judge was justified in inferring the agreement of the parties to be married.

Appellant, however, argues that she presented sufficient evidence to rebut this presumption or inference and, therefore, the rule cannot be applied. She points to the testimony offered by her that Mrs. Jacobs did not change her former name (Pauline Armes) on a driver's license until after the death of James Palmer Jacobs; that she did not change the name on her social security card; and that Palmer had opened bank accounts and had a bank safety deposit box in his name without the joinder of Pauline Jacobs.

In support of her contention, appellant in oral argument relies on *Clack v. Williams*, 189 S.W.2d 503 (Tex.Civ.App.—San Antonio 1945, writ ref'd w.o.m.) wherein the decedent had divorced her husband but according to his testimony they continued to live together in the same manner. Although he testified that he did not know about the divorce, he contended that he was the surviving husband by common-law marriage. The court held that no common-law marriage existed because the existence of a marriage agreement cannot be implied from circumstantial evidence when there is contrary direct testimony by the alleged spouse showing no agreement.

This case is distinguishable because there is no direct testimony by Pauline Jacobs rebutting the presumption of marriage. *See* 1 Wigmore on Evidence § 25 at 399 (3d ed. 1940). The almost identical situation was present in *McIlveen v. McIlveen*, 332 S.W.2d 113 (Tex.Civ.App.—Houston 1960, no writ), in which evidence was offered to contest the existence of a common-law marriage. In that case there was evidence that Lupe Postell McIlveen, claiming to be the common-law wife of Alfred McIlveen, had not changed her social security number; that she continued to use the name Postell and had not used the name McIlveen on other occasions. The court held that such evidence by Mrs. McIlveen goes merely to her credibility and does not constitute an admission on her part that she did not hold herself out as the wife of the deceased. As the court pointed out there were conflicts in the testimony and perhaps some inconsistencies but such conflicts and inconsistencies have to do with the credibility of Mrs. McIlveen and the weight to be given her testimony. We think the same rationale applies here to the marriage agreement and a careful review of the entire record convinces us that there was sufficient evidence, though circumstantial, to support the findings and conclusions of the probate judge in support of the common-law marriage.

The judgment of the trial court is affirmed.